### HEARD and wife *vs.* HORTON and others.

Where a testator, whose will took effect in 1822, after making sundry bequests and devises, and, among others, to his son J. B. H., devised the residue of his real estate, without words of perpetuity, to his son J. H., on condition that he should pay his debts, and a legacy to his daughter; and added, that if J. H. should die without issue *at his decease*, the real estate should be equally divided amongst the heirs of his said son J. B. H.; *it was held*, (1) That the devisee, J. H., took a fee by implication, on account of the charge upon him of the debts and legacy; (2) That the devise over, was not upon an indefinite failure of issue, but a failure at the death of the first taker, and was therefore good as an executory devise; (3) That the words, *heirs* of J. B. H., he having children living at the time of making the will, sufficiently designated these children as the executory devisees, though J. B. H. was himself then living, he being referred to in the will as a living person.

A general devise to the *heirs* of a person who is then living, but is not referred to as living, is void; but a devise to the heirs of one who is stated in the will to be

living is a valid disposition in favor of those who would be his heirs if he should then die.

EJECTMENT for *one-third* part, undivided, of a farm in Orange county, tried at the circuit court for that county, held in September, 1841, before RUGGLES, C. Judge.

In 1817, Jonathan Horton, senior, who then owned the farm, made his will, so as to pass real estate ; and he died in 1822. After making sundry devises and bequests to his son John Budd Horton and others, the will contained this clause : " I give and bequeath to my son Jonathan Horton the remainder of my lands, consisting of about eighty acres, with all my personal property excepting," &c. " on condition that he pay to my daughter Abigail three hundred dollars in one year after my decease, and all the debts then justly charged against me—*and further, that if he should die without issue at his decease, the real estate to be equally divided amongst the heirs of John Budd Horton.*"

It was, in effect, conceded that the devisee, Jonathan Horton, had paid the three hundred dollars and the debts.   The land, of which a third part was claimed by the plaintiffs, was the farm referred to in the clause above mentioned.   The wife of the plaintiff Heard is one of the daughters of the testator. John Budd Horton, above mentioned, and Abijah Horton, were his remaining children.

The devisee, Jonathan Horton, held the land till 1838, when he died leaving no children or descendants, having never been married.   At that time John Budd Horton, and Abijah Horton, as well as Mrs. Heard, were living.

At the time when the will was made, John Budd Horton had eight children, who are the defendants: he died in 1841. The defendants went into possession after the death of their father, and subsequently this action was brought.

The plaintiffs' counsel insisted that they were entitled to recover, on the following grounds:

1. That the devisee, Jonathan Horton, took a fee by implication, although the word heirs, or any equivalent words, were

not in the devise; but he being charged with a legacy and debts took as a purchaser.

2. That the limitation over to the *heirs* of John Budd Horton, was void, being on the indefinite failure of issue, which was too remote.

3. That as John Budd Horton was living at the death of the devisee, Jonathan Horton, he (John B.) had at that time *no heirs*, and the defendants therefore could not take under the will as heirs of John B.

4. That at all events, the estate reverted to the heirs of the testator on the decease of the devisee, as John B. could not, in any event, have heirs till his death; and until that event, the defendants, his children, could not take.

The circuit judge decided that these propositions were not well founded, and that the defendants, as children of John Budd Horton, were entitled to the premises, and the plaintiffs' counsel excepted; and the jury, under the direction of the judge, found a verdict for the defendants, which the plaintiffs now moved to set aside on a bill of exceptions.

*N. Westcott*, for the plaintiffs.

*T. McKissock*, for the defendants.

*By the Court*, BEARDSLEY, J. The devisee, Jonathan Horton, took a fee by implication, under his father's will, being thereby charged personally with the payment of debts and a legacy, in respect to the land devised. (*Spraker* v. *Van Alstyne*, 18 *Wend.* 200, *and cases there referred to.*)

The devise over to "the heirs of John B. Horton," was upon the contingency that Jonathan, the first devisee, "should die without issue at his decease." This was a good executory devise. These words do not import an indefinite failure of issue, but a failure *at the death* of the first taker. Such a limitation is not within the rule against perpetuities. If the devise is ever to take effect, it will do so at the expiration of the life of the first devisee, and the estate is certain to vest somewhere, abso-

lutely, at that time. It can only be necessary to state this principle; it is too well settled to admit of discussion. (4 *Kent*, 271—281, *where the authorities are collected.*)

At the death of Jonathan Horton, the first devisee, his brother, John Budd Horton, was living. Jonathan left no issue at his decease. Upon the words of the will, therefore, the land was to "be equally divided amongst the heirs of John Budd Horton." But he, John B., was then living, and, in strictness, no one can be heir to another person until his decease—*nemo est hæres viventis.*

One may, however, take as a purchaser, by the description of *heir*, while his ancestor is living, and this often occurs in devises. In construing devises, the intention and object of the devisor are mainly to be regarded; and any words or description which denote the devisee with reasonable certainty, are sufficient. A general devise to the heirs of A. who is a living person, but not referred to as such, would be void; for while A. lives, no one can be his heir. But a devise to the heirs of A. who is stated in the will to be *now living*, would indicate with sufficient certainty the persons intended. This designation would plainly refer to such persons as were at the time heirs apparent to A.—those who would be his heirs if he should then die.

A devise to the heirs male of the body of B. *now living*, was held by the king's bench to be a full description of the son of B., who was then alive, and it was adjudged that the estate vested in him, although his father was also alive; the words *now living* being a sufficient designation of the person who was to take under the will. (*James* v. *Richardson*, 1 *Ventr.* 334; *T. Jones*, 97; 3 *Keb.* 832; *Pollex.* 457; 2 *Lev.* 232, *S. C.*) This judgment was reversed in the exchequer chamber; (*T. Raym.* 330;) but the judgment of reversal was reversed in the house of lords, and that of the king's bench affirmed. (1 *Eq. Cas. Abr.* 214; *Burchett* v. *Durdant*, 2 *Ventr.* 311; *Pollex.* 457; 1 *P. Wms.* 233.)

Where the will recognizes the ancestor as living, and makes a devise to his *heir, eo nomine*, this shows that the term was

Heard *v.* Horton.

not used in its strictest sense, but as meaning the heir apparent of the ancestor named. The case of *Goodright* v. *White*, (2 *Wm. Black.* 1010,) was such a case, and was decided on that principle. The testator made separate bequests in his will to his son Richard Brooking, and his daughter Margaret White ; then follows a devise of certain real estate to said R. B. and his heirs male, *and to the heirs* of the daughter Margaret. De Grey, chief justice, said, "The question is, whether here is a sufficient designation of the person, to make the son of Margaret take *as her heir,* living the mother." And he adds, " the intention of the testator is clear that the same favor should be extended to the heirs of Margaret, as to the heirs of the body of Richard. He took notice that his daughter was living, by leaving her a term, and a subsequent annuity : and meant a present interest should vest in her heir, that is her heir apparent, during her life."

*Darbison* v. *Beaumont*, (1 *P. Wms.* 229,) affirms the same principle. This case was first decided in the court of exchequer, which judgment was afterwards affirmed in the house of lords. The grounds of affirmance are stated at *p.* 232, amongst which are these : " That the word heir had, in law, several significations ; in the strictest, it signified one who had succeeded to a dead ancestor ; but in a more general sense, it signified an heir apparent, which supposed the ancestor to be living."

. That the testator, by his will, took notice that " the ancestor was living at that time, and gave her a legacy, and therefore could not intend that the first son should take *strictly as heir,* which was impossible if she was living, but as heir apparent he might." And " that by this construction, every part of the will would stand and be consistent : and the word heir would be also taken in a sense that the law allowed of." (*Cruise's. Dig. Devise, ch.* 10, § 31 ; *Ram on Wills,* 51, 53 ; 1 *Pow. on Dev.* 309 *to* 318 ; 2 *id.* 599, *note ; Bac. Abr. Heir and Ancestor,* (*B.*) ; *Loveday* v. *Hopkins, Ambler,* 273 ; *Bouv. Law Dic. Heir ; Doe* v. *Perratt,* 5 *Barn. & Cress.* 48.)

The will, in the present case, recognized John Budd Horton

as a person then in life, thereby showing that the designation of his *heirs* as devisees, could not mean those who were strictly such. Understood in that sense, the will would be absurd and contradictory. It would contain a devise to persons as having already succeeded to a deceased ancestor as his heirs, while the same will asserted that the ancestor was still in life, and contained a devise to him. Such an absurdity should be avoided. A more reasonable construction should be put upon the words used by the testator; one which avoids what is absurd and gives effect to the will. The words " heirs of John Budd Horton," may well be understood as meaning his children. In common language, children are so called in the lifetime of their father, and they are his heirs apparent. This construction gives effect to the devise, and, I cannot doubt, is according to what the testator really intended. A new trial should be denied.

New trial denied.