Tinder *v.* Tinder *et al.*

No. 15,763.

## TINDER *v.* TINDER ET AL.

DEED.—*To Heirs of Person Living.—Effect of.*—Where a warranty deed was executed to "Sarah A. Tinder and the heirs of Simeon Tinder, by Sarah A. Tinder his wife," both Simeon Tinder and his wife being alive at the time of the execution of the instrument, the deed conveyed the land therein described to Sarah A. Tinder and her children by Simeon Tinder. The word "heirs" in said deed was not used in its strict legal sense, but in the sense of children, and the conveyance operated to a person named, and a designated class of persons whose identity could be established, and conveyed them equal shares in the land. The deed refers to a class, and not to possible descendants. There is manifested an intention that the land shall pass directly out of the grantor into the designated grantees. The estate, it is obvious, was intended to leave the grantor and vest directly and immediately in the grantees.

SAME.—*Word "heirs" construed.—Intention of Grantor.*—A conveyance of land describing the grantees as heirs of a person named and still living, is not ineffective on the ground that a person can not have heirs during life, when the language used clearly shows that the word "heirs" was not employed in its strict legal sense, but as meaning children, and that to hold otherwise would result in manifest injustice, and defeat the intention of the grantor.

SAME.—*Construction of Deed.*—In construing a deed it is the duty of the court to assign to the words of the grantor their fair and reasonable meaning, so that the intention of the grantor may be discovered and carried into effect.

From the Fountain Circuit Court.

*H. H. Dochterman,* for appellant.

*C. M. McCabe* and *J. Bingham,* for appellees.

ELLIOTT, C. J.—Woodruff Beals was the owner and in possession of the land here the subject of controversy on the 9th day of June, 1868, and on that day he and his wife executed a warranty deed, wherein the grantees were described as "Sarah A. Tinder and the heirs of Simeon Tinder by Sarah A. Tinder his wife." Simeon Tinder and his wife were living at the time the deed was executed. James Tinder, Lewis Tinder, David Tinder, Joseph Tinder and Mary Tinder were his children by his wife Sarah A. Tinder, and were

then living.   On the 4th day of October, 1884, James Hendy and Sampson Reed recovered a judgment against David Tinder and Sarah A. Tinder, and on this judgment a sale of the land was made by the sheriff to Reed, who assigned the certificate of the sheriff to Charles E. Bove and John B. Schwin, to whom a deed was executed.   The land was of the value of twelve hundred dollars, and was sold by the sheriff for sixty-eight dollars.   On the 6th day of June, 1887, Bove and Schwin conveyed the land by a deed of quitclaim to Lewis Tinder.   On the 15th day of September, 1886, David Tinder brought suit against Bove and Schwin to quiet title to an undivided one-fourth interest in the land, but judgment was rendered against him.  The claim of David Tinder on the action named was founded upon the deed executed by Woodruff Beals, and the title asserted by Bove and Schwin was based upon the deed executed to them by the sheriff.   The facts, of which we have given a synopsis, are set forth in a special finding of facts upon which the trial court stated conclusions of law adverse to the appellant. The controlling conclusions stated are these:   " 1st. The deed to Sarah Tinder would not at common law have created an estate tail for the reason that the entail is not to her heirs, but to the heirs of one who is not a grantee.   2d. The word heirs on the said deed was used in the sense of children, and the conveyance operated to a person named and a designated class of persons whose identity could be established and conveyed them equal shares in the land.   3d. Lewis Tinder is the owner of one undivided half of the land, and is entitled to have his title quieted thereto."

The theory of the appellant, Lewis Tinder, is that he is the owner of all the land, and as such was entitled to a decree quieting his title.

The theory is by counsel asserted to be sound upon the ground that Sarah A. Tinder is the sole legal grantee in the deed executed by Woodruff Beals, and that the sheriff's sale upon the judgment against her vested title in the appellant's

grantors, the purchasers at the sheriff's sale, Bove and Schwin. If it be true, as counsel assert, that the deed did vest the whole estate in Sarah A. Tinder, then the conclusion is valid. The pivotal question, therefore, is, did the deed convey to Sarah A. Tinder the entire estate in the land to the exclusion of the children of Simeon Tinder by her?

There are authorities which lend support to the doctrine that a conveyance of land, describing the grantees as the heirs of a person named, is ineffective. The doctrine is placed upon the rule of the common law that a person can not have heirs during life, but, as shown in *Huss* v. *Stephens,* 51 Pa. St. 282, and in *Stephens* v. *Huss,* 54 Pa. St. 20, the rule does not apply where registry stands in the place of livery of seisin. The whole series of cases in America seems to rest on the case of *Hall* v. *Leonard,* 1 Pick. 27, and that case, as declared in *Huss* v. *Stephens, supra,* was not well decided. It is possibly true that this court is committed to the doctrine of *Hall* v. *Leonard, supra,* for it has been approved by our decisions. *Winslow* v. *Winslow,* 52 Ind. 8 ; *Outland* v. *Bowen,* 115 Ind. 150. But while it may be true that we are committed to the rule stated, it is also true that the court has manifested a purpose to restrict rather than enlarge its operation. *Lyles* v. *Lescher,* 108 Ind. 382. The rule is the product of an adherence to a dry technical doctrine that often defeats the clear intention of a testator or grantor, and seldom gives it effect. It generally produces injustice, since it often sacrifices substantial rights to fancied consistency or useless fiction. The rigid adherence to the meaning ascribed by law writers to the term " heir " or " heirs," has resulted in giving many instruments a meaning very different from that intended by their framers. It is not only the unlearned who use the term " heirs " as meaning " children," for the greatest of literary men often and often use the term as meaning children. And so do the courts. *Griswold* v. *Hicks,* 132 Ill. 494 (22 Am. St. Rep. 549) ; *Ridgeway* v. *Lanphear,* 99 Ind. 251 ; *Hull* v. *Beals,* 23 Ind. 25 ; *Star, etc., Co.* v. *Morey,* 108

Mass. 570; *Urich's Appeal*, 86 Pa. St. 386 (27 Am. Rep. 707); *King* v. *Beck*, 15 Ohio, 559; *Scott* v. *Guernsey*, 48 N. Y. 106. We think the rule is not one to be applied except in cases falling bodily within its operation. We do not regard the case before us as within the rule, even upon the concession that the rule certainly exists, and is a general one. We think the case falls within the wide and sensible general rule that the intention of a grantor will be sought, and, if discovered, carried into effect.

The plain meaning of the grantor was that the children of Sarah A. Tinder and Simeon Tinder should take the land, since "the heirs of Simeon Tinder by Sarah A. Tinder, his wife," could be no others than their children. There could be no line of descendants, because the heirs meant by the grantor must be the particular class designated in the deed, namely, the heirs of Simeon Tinder by his wife, Sarah. The deed refers to a class and not to possible descendants. If the grantor had intended to vest the entire estate in Sarah A. Tinder, the superadded words, "and the heirs of Simeon Tinder by Sarah A. Tinder, his wife," would not have been employed, since without them the deed would, under our statute, have vested the whole estate in her. The courts have no right to arbitrarily and causelessly reject the words of a deed. *Shimer* v. *Mann*, 99 Ind. 190. Words written in a deed are to be given effect, unless there is sufficient reason for disregarding them. *Essick* v. *Caple, ante,* p. 207. There is here no such reason. The words employed by the grantor can be given full effect and his obvious intention carried into effect by adjudging that the deed conveys the land to Sarah A. Tinder and her children by Simeon Tinder. In so adjudging we do no more than give effect to a very old rule of the law, one remounting to the case of *Burchett* v. *Durdant*, 2 Vent. 313. The rule has been approved by our own and other courts. *Shimer* v. *Mann, supra; Vanorsdall* v. *Van Devanter,* 51 Barb. 137; *Heard* v. *Horton,* 1 Denio, 165; *Jack* v. *Fetherston,* 9

Bligh, 237; *Darbison* v. *Beaumont*, 1 P. Wms. 229. We adhere to a long settled rule, and give just effect to the deed by adjudging that the words "heirs of Simeon. Tinder by Sarah A. Tinder, his wife," are descriptive of a class, and mean the children of the persons named, and not an indefinite line of descendants. Our own decisions clearly affirm that the word "heirs" may often be taken as descriptive of a class who shall take directly from the grantor. *Conger* v. *Lowe*, 124 Ind. 368; *Underwood* v. *Robbins*, 117 Ind. 308; *Mellett* v. *Ford*, 109 Ind. 159; *Brown* v. *Harmon*, 73 Ind. 412; *Rapp* v. *Matthis*, 35 Ind. 322; *Rusing* v. *Rusing*, 25 Ind. 63; *Jones* v. *Miller*, 13 Ind. 337. In the deed we are considering there is manifested an intention that the land shall pass directly out of the grantor into the designated grantees, and there is nothing warranting the inference that the descendants of the grantor or grantees shall take remotely or indirectly. The estate, it is obvious, was intended to leave the grantor and vest directly and immediately in the grantees.

The case before us is easily discriminated from one wherein the grantor attempts to create a particular estate and limit a remainder over. The attempt here was to vest in Sarah A. Tinder and "the heirs of Simeon Tinder by Sarah A. Tinder, his wife," the whole estate, and to vest it immediately. There was no purpose to create a remainder nor to do anything else than vest in Sarah A. Tinder and her children begotten by her husband Simeon a present estate in all the land conveyed. There was neither a dividing of interests nor a carving out of estates. The fact that there was no attempt to carve out a particular estate or create a remainder effectively marks this case as one belonging to a different class of cases from the class represented by such cases as *Outland* v. *Bowen*, *supra*; *Moore* v. *Littel*, 41 N. Y. 66; *Gifford* v. *Choate*, 100 Mass. 343; *Ramsdell* v. *Ramsdell*, 21 Me. 288; and *Jones* v. *Bacon*, 68 Me. 34. If there had been

an attempt to create an estate in remainder we should be faced by a very different question.

An examination of particular instances will strengthen the conclusion we have declared. In the case of *Fountain County, etc., Co.* v. *Beckleheimer*, 102 Ind. 76, the words of the deed were, "To have and to hold the same to the said Nancy West and her present heirs forever," and it was held, after a full review of the authorities, that Nancy West and her apparent heirs took the estate in common. The restrictive words in the deed before us are unquestionably clearer and stronger than was the qualifying word "present" in the deed construed in the case to which we have referred. The deed which received construction in the case of *Heath* v. *Hewitt*, 127 N. Y. 166, conveyed land to "the heirs of Warren Heath," a living person, and it was held to vest title in the children of Warren Heath. The court quoted with approval from *Heard* v. *Horton, supra,* this statement of the law: "Where the will recognizes the ancestor as living, and makes a devise to his heir, *eo nomine,* this shows that the term was not used in its strictest sense, but as meaning the heir apparent of the ancestor named." In the deed which occupies our attention, not only is the ancestor recognized as living, but it is also unequivocally indicated that the heirs meant are those of Simeon Tinder by his wife Sarah. By no possibility could such heirs be other than his and her children, and, as such, his heirs presumptive or apparent. There was, therefore, a grant to a particular class of persons, and not to heirs indefinitely. In the case of *Tucker* v. *Tucker*, 78 Ky. 503, the deed purported to convey land to "Ann Tucker and the heirs of John C. Tucker," and the court gave judgment vesting title in Ann Tucker and her children, saying among other things, that "We are of the opinion that the word heirs, where the conveyance speaks of the heirs of John C. Tucker, should be taken as synonomous with children, and to have the same effect as if the names of the then living children (Foster and Rachel) had

been mentioned in the deed.    An absolute estate was vested, *in præsenti,* in Martha Ann Tucker and her two children, Foster and Rachel."    Another case in the  same court gives full consideration to the question.    *Brann* v. *Elzey,* 83 Ky. 440.    The deed in that case purported to convey the land to " Jane Williams, wife of Isaac Williams, and to the heirs of her body by the said Isaac Williams," and it was held that the deed conveyed the land to Jane Williams and her children.    The court gave the question full discussion, saying, among other things, " The words ' to the heirs of her body, by the said Isaac Williams,' plainly mean their children. This was clearly not only the intention of the grantor, but it is the obvious meaning of the language."    In the case of *Tharp* v. *Yarbrough,* 79 Ga. 382 (11 Am. St. Rep. 439), it was held that the words " to the heirs of Robert A. Tharp, their heirs and assigns," conveyed the land to the children of Robert A. Tharp.

The object of the description of a grantee in a deed is to supply the means of identifying the person to whom the land is granted.    Neither the description of the thing conveyed nor a description of the person to whom it is conveyed can of itself identify the person or thing; all that it can do is to furnish the means of establishing the identity.  A description which effects that purpose is sufficient.  The description of the grantees in the deed before us does supply the means of identifying all of the grantees, for no one can doubt that they were Sarah A. Tinder and her children by Simeon Tinder.

. The appellant's counsel say that a man can not have heirs during life, and this is true of heirs in the strict legal sense, but it is not true of heirs in the popular sense.    If we could say that the word " heirs " was employed in its strict legal sense by the grantor in the deed before us, we might apply the maxim to which counsel refer, but the associated words take from the word " heirs " its strict legal meaning.    The word " heirs " can not have its strict legal meaning, and as it

can not have that meaning it must be assigned the meaning popularly ascribed to it. We agree with counsel that the word "heirs," when used in its strict legal sense, is one of controlling power. *Allen* v. *Craft*, 109 Ind. 476. But we can not agree that Woodruff Beals employed the word in its strict legal signification. We interpret the deed as manifesting an intention to convey the land to Sarah A. Tinder and her children, and in doing this we assign to the words of the grantor their fair and reasonable meaning, rejecting the technical and rigid meaning placed upon the language of the instrument by the appellant.

