## FULLAGAR *v.* STOCKDALE.

1. DEEDS—CONSTRUCTION—ESTATE CREATED.

   A deed to a remarried widow, her husband, and her heirs, both she and her husband at the time having children by former marriages, cannot be construed to vest the entire estate in the husband and wife as tenants by the entirety.

2. SAME.

   A deed may be construed by considering its language, the surrounding circumstances, and the situation of the parties.

3. RULE IN SHELLEY'S CASE—ABROGATION.

   The rule in Shelley's Case has been abrogated in this State by the statute, 3 Comp. Laws, § 8810.

4. DEEDS—CONSTRUCTION—HEIRS—CHILDREN.

   Where the father of a remarried widow granted land to her husband, herself, and "her heirs," and to the heirs and assigns of "the party of the second part," and both she and her husband at the time had children by former marriages, the word "heirs" must be construed to mean "children," and the deed to convey to her and her husband as one grantee, and to her two children, each an undivided one-third of the land.

5. SAME—CHILDREN—CONVEYANCE OF INTEREST.

   A conveyance by one of the children, during the life of his mother, of his interest to his stepfather, vested in the stepfather an undivided one-third of the land.

6. SAME—PRACTICAL CONSTRUCTION.

   After a conveyance to a remarried widow, her husband, and her children by her first husband, one of the children conveyed his interest in the land to his stepfather. *Held,* that the failure of the other child to question the mother's right to live on the property during her lifetime did not constitute such a practical construction of the deed between the parties as conveying the entire estate to the husband and wife as tenants by the entirety as to authorize that child to claim the interest of her brother through a deed executed by him to her after his mother's death.

Appeal from Allegan; Padgham, J. Submitted October 20, 1904. (Docket No. 89.) Decided December 7, 1904.

Bill by Sarah Fullagar and Anthony Weber, administrators of the estate of Harriet Gibbs, deceased, against David Stockdale, administrator of the estate of William Gibbs, deceased, Sarah Beach, and John F. Gibbs, to remove a cloud from the title to certain land. From a decree for complainants, defendants appeal. Reversed.

*Fidus E. Fish*, for complainants.

*C. R. Wilkes*, for defendants.

CARPENTER, J. February 21, 1867, John Pierce and Olive Pierce, of the first part, conveyed to "William Gibbs, Harriet Gibbs, and the heirs of said Harriet Gibbs," of the second part, and to the "heirs and assigns" of the said party of the second part, the land in controversy in this suit. Said William Gibbs and Harriet Gibbs, of the second part, were husband and wife. Said Harriet Gibbs was the daughter of the parties of the first part. She was at the time of this conveyance the mother of two infant children by a former husband, namely, Sarah Yates (now Fullagar, the first-named complainant) and Frank Yates. After the conveyance was made there was born to William and Harriet a son, namely, defendant John F. Gibbs.

In 1878, by quitclaim deed, Frank Yates conveyed his interest in said land to said William Gibbs. William Gibbs died in 1888, leaving a will, which was afterwards probated, by which he devised a life estate in said property to his widow and the fee to his son, said John F. Gibbs. Harriet Gibbs continued to live on said property with her daughter Sarah until 1902, when she died intestate. After such death said Frank Yates, by quitclaim deed, transferred his interest in said property to his sister, the first-named complainant. This bill was then filed to remove the cloud cast upon complainants' title by the deed from Frank Yates to William Gibbs and by the probate of the latter's will.

Complainants contend that by the conveyance in question William and Harriet Gibbs acquired the entire title

of the land as tenants by the entirety, and that this title vested in Harriet as the survivor, and that, therefore,. William Gibbs acquired no interest by the conveyance from Frank Yates.

The first two named defendants contend that the deed conveyed a one-third interest to William and Harriet Gibbs as tenants by the entirety, and a one-third interest to each of the latter's children, namely, Sarah and Frank, Yates, and that, therefore, the deed from Frank Yates to William Gibbs transferred an undivided one-third interest in the property.

The court below granted complainants relief, and the defendants just referred to appeal to this court.

The question presented by this controversy depends, as conceded, upon a proper construction of the deed. For the purpose of enabling the court to properly construe such deed, complainants proved in the lower court that when it was executed there was living a child of said grantee, William Gibbs, and that "the object of making the deed was that it would cut off this child and insure the property to Harriet Gibbs' two children." The grantors "wanted to cut off William Gibbs' daughter by his first marriage. * * * They wanted Frank Yates and Sarah Yates to have that forty acres after Harriet and William Gibbs were dead." The witness who gave this testimony (and it was all given by one witness) says that he "don't recall there was any talk;" that, "if Mrs. Gibbs should have any other children, they [the grantors] wanted them cut off." This evidence warrants the conclusion that the grantors intended to convey an estate to William and Harriet Gibbs until the death of the survivor, and to convey the remainder to the children of said Harriet.

If we give effect to this testimony—and I think to do so we would violate the principle which prevents the legal effect of an instrument being changed by parol testimony —(see *Morrill* v. *Morrill*, ante, 112), it would not support complainants' contention that the deed should be construed to vest the entire title in William and Harriet

Gibbs as tenants by the entirety; for that construction would give the children of Harriet nothing, and in the event of William surviving his wife it might all pass to the child whom the grantors desired to exclude. It may also be said that, if the conveyance had been so drawn as to carry out this claimed intention of the grantees, it would have immediately vested in said Frank Yates an undivided interest amounting to at least one-third. While Frank Yates could not have the possession of this property until the death of William and Harriet, he nevertheless (see section 8795, 3 Comp. Laws) would have had a vested remainder, which he could convey, and which, therefore, was conveyed by him to his stepfather, William Gibbs.

We reach the same conclusion by a proper construction of the deed; that is, by ascertaining its meaning by considering, as we certainly can, the language, the surrounding circumstances, and the situation of the parties. See *French* v. *Carhart*, 1 N. Y. 96; *Coleman* v. *Beach*, 97 N. Y. 545; *Seymour* v. *Bowles*, 172 Ill. 521.

The grantees named in the deed are "William Gibbs, Harriet Gibbs, and the heirs of said Harriet Gibbs." The entire title is transferred to these grantees and to their "heirs and assigns." Complainant asks us to say that, according to this language, nothing was transferred to the heirs of Harriet Gibbs. She asks us to construe this conveyance as if they were not mentioned as grantees therein. It is true that there was a rule of the common law, called the "Rule in Shelley's Case," by which, if an estate was granted to one for his life, and by the same instrument the remainder was granted to his heirs generally, or to the heirs of his body, the word "heirs" was a word of limitation, and not of purchase. *Frazer* v. *Chene*, 2 Mich. 90. That is, the word "heirs" simply indicated the character of the estate transferred to the grantee. Under that rule the heirs of the grantee obtained nothing in such a conveyance. If this rule ever could have been used in construing the deed in question—and this I doubt—it is

sufficient to say that it has been abrogated by statute in this State. See section 8810, 3 Comp. Laws. It is also true that the word "heirs" has a technical legal meaning, and as such it describes those who succeed to one's ownership of real estate on his death. In that sénse a living person has no heirs. And therefore, if the word "heirs" is given that meaning in the deed under consideration, the grant to the heirs of Harriet Gibbs is meaningless, and transferred nothing. But the word "heirs" is often used as synonymous with "children;" doubtless because the latter are heirs apparent.

There is presented to us the alternative between saying that the grantors intended nothing when they granted the estate to the heirs of Harriet Gibbs, or of saying that they intended the estate should pass to the children of Harriet Gibbs. There is no difficulty in making a choice. We can say, as this court once before said (see *See* v. *Derr*, 57 Mich. 372):

"As Charles Derr [Harriet Gibbs] is a party to the deed, and therefore shown by it to be living, the word 'heirs' must be construed as used in its popular, and not uncommon, sense, as 'children,' and meant to so describe them."

See, also, *Fountain County Coal & Mining Co.* v. *Beckleheimer*, 102 Ind. 76; *Tucker* v. *Tucker*, 78 Ky. 503; *Heard* v. *Horton*, 1 Denio, 165; *Heath* v. *Hewitt*, 127 N. Y. 166; *Fanning* v. *Doan*, 128 Mo. 323; *Seymour* v. *Bowles*, 172 Ill. 521; *Love* v. *Francis*, 63 Mich., at page 193. Contra, *Booker* v. *Tarwater*, 138 Ind. 385.

We conclude, therefore, that the conveyance in question transferred to Sarah Fullâgar, to Frank Yates, and to William and Harriet Gibbs (these, as husband and wife, are to be considered as one grantee only) each an undivided one-third of the land in controversy. See *Tucker* v. *Tucker*, 78 Ky. 503; *Anderson* v. *Tannehill*, 42 Ind. 141; *Hulett* v. *Inlow*, 57 Ind. 412; *Hardenbergh* v. *Hardenbergh*, 10 N. J. Law, 45; *Barber* v. *Harris*, 15 Wend. 615; *Johnson* v. *Hart*, 6 Watts & S. 319. As

the interest of Frank Yates was duly conveyed to William Gibbs, the latter died possessed of such interest.

We cannot agree with the learned circuit judge that the parties in interest placed upon this deed a practical construction in harmony with his decision. It is true that no one during Harriet's life disputed her right of occupancy. But the conveyance of the interest of Frank Yates to William Gibbs, and the latter's will, was a denial that the entire estate was held by the husband and wife as tenants by the entirety. It may also be said that after this conveyance was made the parties in interest acted precisely as they would have acted if they intended to recognize its validity and to give it full legal effect. After that time the only party having authority to question the right of possession of William and Harriet was complainant herself. Surely, her failure to question it does not now enlarge her rights. Indeed, it does not appear that she was called upon to question it, since during a portion of this time she and her husband occupied the land as tenants of her mother.

It follows that, in our judgment, the decree of the lower court was erroneous, and that decree must therefore be reversed, and a decree entered dismissing complainants' bill, with costs.

The other Justices concurred.