## Whitworth, et al. v. Whitworth, et al.

## Thompson v. Whitworth Executor, et al.

### (Decided October 17, 1924.)

### Appeals from Meade Circuit Court.

1. Deeds—Deed to Bodily Heirs of Certain Person Conveyed Full Title to Present Bodily Heirs.—A deed of land to bodily heirs of W. conveys full title directly to present bodily heirs of that per-

son, and title vests in grantees in praesenti, and W. takes no interest.

2.  Adverse Possession—Possession by Parent of Lands of Infant Children Held Not Adverse.—Possession by parent of land conveyed to his infant children held not adverse to them.

3.  Deeds—Terms "Bodily Heirs" and "Heirs of the Body" Deemed Used in Technical Sense, Unless Different Intention Appears from Instrument.—When terms "bodily heirs" and "heirs of the body," or similar expressions, are used in deed, if there is nothing in instrument showing contrary purpose, they will be deemed used in their legal and technical sense; but where, from face of instrument and facts and circumstances, it is apparent they were used in different sense, intention of parties will be given effect.

4.  Taxation—No Title Conveyed by Sale where Property Listed for Taxation as Property of One Not Owner.—Where property belonging to infant children was listed for taxation as property of their father as agent of the children, sale made in part for personal taxes of father was void and conveyed no title.

WM. McKEE DUNCAN for appellants.

G. K. HOLBERT for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing the first named appeal and affirming the second.

Thomas Whitworth died intestate in 1892, and left surviving him his widow and six children, viz., T. G. Whitworth, Millie Thompson, Mary Ellen (Tate) Herrick, Robert, Charles and Ode Whitworth, together with a grandson, Roscoe Chamberlain, the son of his deceased daughter Lucy.

He left a small farm upon which he and his wife had lived and raised their children, consisting originally of 47 acres, of which he had before his death conveyed 15 acres, 10 acres to the "bodily heirs" of his son T. G. and five acres to his daughter, Mrs. Herrick. This left 32 acres to which he had title.

After his death his widow, Maria, together with the three youngest children, Robert, Charles and Ode, continued to live upon the farm. No dower was allotted to the widow and no steps of any kind taken to divide the property or dispose of it during her lifetime. She continued to live there with her three sons as she had always done, and her right to do so was not called in question. One of the younger sons, Charles, married and moved away a few years after his father's death, and left the

mother and other two living upon the land, where they continued so to live until the death of the mother in 1916.

Ode's health became poor even before his mother's death, and he died in February, 1918, leaving a will wherein he devised his whole estate equally to his two brothers, Robert and Charles, and his sister, Millie Thompson.

In August, 1918, T. G. Whitworth, Millie Thompson and her husband and Mrs. Herrick and her husband filed their action against Robert and Charles Whitworth alleging that Thomas Whitworth, their father, was at the time of his death the owner of the 47 acres of land, and asking for a partition of the same among his children. Thereafter Roscoe Chamberlain, the grandson, having died, his father, his only heir at law, was made a party.

Robert Whitworth in an answer, counterclaim, setoff and cross-petition denied that either T. G. or Charles Whitworth or Millie Thompson or Mary Ellen Herrick was entitled to any part of the lands of which his father died seized, and asserted that he was the sole and only owner of the same. He then alleges in a separate paragraph that on the 28th of October, 1887, his father had conveyed to T. G. Whitworth, by way of advancement to him and in full of his interest in the father's estate, 10 acres of the 47 acres, and that T. G. accepted the same and moved on the land and continued to live there for a number of years. That thereafter and in February, 1903, the said 10 acres were levied on by the sheriff for taxes due and owing the Commonwealth and Meade county by T. G. Whitworth for a period of several years. And the same was sold for such taxes in the manner prescribed by law, when one Richardson became the purchaser, who thereafter transferred his bid to Robert Whitworth; and that more than two years thereafter, said land not having been redeemed from the sale, the sheriff conveyed the same to said Robert Whitworth.

He also claims title to the 10 acres under a deed from T. G. Whitworth dated 21st of November, 1905, in which deed reference is made as the source of T. G. Whitworth's title to the deed of Thomas Whitworth to "T. G. Whitworth's bodily heirs."

The deed of the 28th of October, 1887, from Thomas Whitworth and his wife conveyed to "T. G. Whitworth's bodily heirs" the 10 acres of land; and T. G. Whitworth had living at that time two children, the appellants Lewis and Charles Whitworth, and they filed their petition to

be made parties, and asserted title to the 10 acres under the provisions of that deed.

Robert Whitworth in another paragraph of his answer and cross-petition asserted title to whatever interest Mrs. Thompson and Mrs. Herrick had in the real estate left by their father, but the judgment of the court denied him any rights as against either of those parties, and as there has been neither asked nor granted any cross-appeal it is unnecessary to further consider his rights as against them.

Thereafter and during the pendency of the partition suit, Millie Thompson filed her equitable action against her brothers, Robert and Charles, and against Robert as executor of her deceased brother Ode, praying for a settlement of Ode's estate, and alleging that Ode was at his death the owner of certain described tracts of land. In that action Robert individually and as executor answered denying that his brother Ode was at his death the owner of the tracts of land in question or anything more than an undivided one-half interest therein, and asserting title in Robert himself to the other one-half undivided interest. He likewise asserted as to certain money and personal property left by his brother that the same at Ode's death belonged to a partnership of which he and his brother Ode were members, and asking for a settlement of that partnership.

The two actions were consolidated, and after their consolidation by an agreed order it was recited that all of the tracts of land in controversy between all the parties to the consolidated actions had been by agreement conveyed by the parties to the U. S. government as a part of Camp Knox, and that the consideration therefor should be paid into court and distributed among the parties as they might appear to have been the owners of the land.

In the consolidated actions a judgment was entered adjudging the 10 acres conveyed in 1887 to "T. G. Whitworth's bodily heirs" to be the property of Robert and the estate of Ode Whitworth; it denied Robert Whitworth any claim to the five acres alleged to have been conveyed to Mrs. Herrick, and denied to him individually and as executor of Ode Whitworth any part of the fund in question on account of their claim to Millie Thompson's interest in the land; and it denied to the children of T. G. Whitworth any claim to the 10 acres. It likewise adjudged that an equal partnership had existed between

Ode and Robert Whitworth prior to and at the time of
Ode's death, in the personal property left by Ode, and
that Robert and Ode jointly owned by reason of deeds
made between them the certain tracts of land described
therein, and referrel the cause to a commissioner for a
settlement of the partnership and of the estate of Ode
Whitworth.

From that judgment T. G. and Lewis and Charles
Whitworth, his sons, prosecute an appeal in the first
named action, and Millie Thompson prosecutes an appeal
from the judgment in the second named action establish-
ing the said partnership. Robert Whitworth also ex-
cepted to so much of the judgment as denied his claim to
the five acres of land conveyed to Mrs. Herrick, and in-
dividually and as executor excepted to so much of the
judgment as allowed T. G. Whitworth, Millie Thompson
and Mrs. Herrick any part of the estate of Thomas Whit-
worth, deceased, but as heretofore recited there is no
cross-appeal and these questions are not presented.

As to the 10 acres, the court adjudged that the deed
from Thomas to "T. G. Whitworth's bodily heirs" was
void for uncertainty, and likewise that Robert and Ode
and those under whom they claimed had been in actual
adverse possession of the same for more than 15 years
before the institution of these actions, and they were,
therefore, adjudged to be the owners.

At the time the deed of October 28th, 1887, was made,
T. G. Whitworth had only two children, the appellants
Lewis and Charles, and they were his only "bodily heirs"
then in existence. The deed was directly to the bodily
heirs of T. G. and spoke of and from the present and had
reference to his then bodily heirs. Such a deed is plainly
distinguishable from one wherein a life estate is first
given to one, and a remainder interest thereafter to his
bodily heirs, for such an instrument, as to the remainder-
men, has reference to the bodily heirs which he may have
at the time of his death, and not the bodily heirs which
he may have had at the time the instrument was executed.
In the deed in question there is no intervening estate,
but it conveys the full title directly to the present bodily
heirs of a named person, and the title vests in the vendees
in praesenti. That such is the correct interpretation is
clear from the fact that T. G. Whitworth, together with
his family, including his said two "bodily heirs," imme-
diately moved to and occupied the 10 acres and continued
to occupy it for some years. It needs no argument to

show that T. G. Whitworth took no title, present or prospective, whatsoever in the 10 acres. He merely as the custodian of the infant title holders occupied the same jointly with them, and it is apparent from the whole record, as well as the language of the deed in question, that his holding was not, nor was it intended to be, adverse to the real title holders who were his infant children.

The rule of interpretation is that when the terms "bodily heirs," "heirs of the body" or similar expressions are used in a deed, if there is nothing to be found in the instrument showing a contrary purpose, they will be deemed to have been used in their legal and technical sense, and so interpreted; but where from the face of the instrument and the facts and circumstances surrounding the parties at the time, it is apparent they were used in a different sense, the intention of the parties will be given effect and the instrument construed so as to conform to such intention.    Dotson v. Kenton Coal & Coke Co., 150 Ky. 60.

T. G. Whitworth's name was not mentioned in the instrument except as descriptive of the real vendees. That is, "T. G. Whitworth's bodily heirs," and by no conceivable interpretation can it be said that he took any interest whatsoever under that deed.   Not only is the language of the instrument clear as to its purpose, not only does it unmistakably speak as and from the present and convey a present interest and an absolute one, but it is disclosed that at the time T. G. Whitworth, the father, was involved in court proceedings and litigation of one kind or another which made it inadvisable for his father to give to him any property whatsoever. Plainly the purpose was to convey to his children a part of the home farm by their grandfather so that they, as well as their father, might have a place of abode not subject to his debts.

Under the language of the instrument and the facts disclosed, the plain purpose of the vendor was to convey the present title absolutely to Lewis and Charles Whitworth, the children of T. G. Whitworth.

The judgment of the lower court did not uphold the validity of the tax title, and could not properly have done so.   In the first place, the tax deed on its face recites that the property sold was listed for taxation as the property of T. G. Whitworth, agent for his children, *and as the property of T. G. Whitworth,* from which recital it is clear the sale was made at least in part for the personal taxes of T. G. Whitworth.   In fact, the evidence tends

strongly to show that his poll taxes were embraced in the bill for taxes for which the sale was made. There are several other irregularities complained of and pointed out which would invalidate the tax sale, but we consider this one sufficient. Miller v. Powers, 184 Ky. 417.

As T. G. Whitworth had no title to or interest in the land sold for taxes, plainly the sale was for more than the correct amount of taxes, penalty and costs due by the owners of the land.

It is clear that prior to the execution of the sheriff's deed, which was on December 4, 1905, the possession of T. G. Whitworth, and of his mother and brothers after he removed from the 10 acres in 1902, had been amicable and not adverse to the title holders, and as the adverse possession did not begin until after the sheriff's deed, or at least until after the deed from T. G. to Robert on the 21st of November, 1905, the answer of Lewis and Charles Whitworth, the title holders, having been filed September 18, 1918, asserting their title, there had been then no adverse possession by Robert for such a time as could have ripened into title.

On this branch of the case, therefore, we hold that Lewis and Charles Whitworth as the only "bodily heirs" of T. G. Whitworth on the 28th of October, 1887, took title at that time to the 10 acres, and that the words "bodily heirs" clearly meant in that instrument the then living children of T. G. Whitworth; likewise it is clear that they were not divested of title by the sheriff's deed, nor was there such adverse possession of Robert as ripened into a title in him.

In December, 1916, Ode Whitworth, now deceased, conveyed to his brother Robert an undivided one-half interest in two tracts of land other than the 47 acres; and at the same time Robert deeded to his brother Ode a like interest in two other tracts of land. The deed from Ode to Robert is attacked upon the ground that Ode at the time had not sufficient capacity to understand a business transaction and make such a conveyance, and that he was then in a weakened and infirm condition of body and mind, and that Robert by fraud and false representation and the exercise of undue influence procured the execution of such deed.

This is controverted by Robert, and it is asserted by him, and the evidence is ample to sustain it, that for some years prior thereto he and his brother Ode had been partners, and had owned all of their real and personal prop-

erty in partnership, and that the two deeds in question were made by them to each other merely as evidence of the partnership, and to show that each was the owner of a one-half undivided interest in the land held by the other.

The fact that these two deeds were executed at a time when Ode was in bad health tends strongly to corroborate the other convincing evidence in the record that Ode and Robert were in fact partners in all of their property. Without going into the details of the evidence on the question of partnership, we fully concur in the finding of the chancellor that there was in fact such a partnership and that the deed from Ode to Robert was valid.

On the first appeal the judgment is reversed with directions to adjudge the 10 acres to have been the property of Lewis and Charles Whitworth, the children of T. G. Whitworth, and to distribute the fund in court accordingly; on the second appeal the judgment is affirmed.