TILLOTSON, et al, Appellants, v. CARPENTER, et al, Respondents.

(250 N. W. 339.)

(File No. 7429. Opinion filed October 9, 1933.)

*Orvis & French,* of Yankton, for Appellants.
*Thomas McInerny,* of Elk Point, for Respondents.

CAMPBELL, J. The sole question upon this appeal is as to the proper construction of a real estate deed made, executed, and delivered by one William Tillotson (fee owner of the premises described therein) in March, 1891. Relevant facts appear from the record as follows:

William Tillotson was first married some time prior to the year 1888. Of this, William's first marriage, there was born one child and one only, a son named Charles, who survived until the year 1908, when he died. Not long after the birth of her son Charles, William's first wife died. After her death, and in June, 1888, William remarried; the name of his second wife being Lizzie. William had acquired fee title to the realty involved in this litigation prior to his marriage to Lizzie. Two years after their marriage, and in June, 1890, there was born to William and Lizzie a son, Andrew. Some ten months thereafter, and in March, 1891, William executed and delivered and caused to be recorded the deed in question, which was in form as follows:

"Know all men by these presents:

"That I, William Tillotson, of the county of Union, state of South Dakota, for the consideration of the sum of one dollar in hand paid by second party, the receipt whereof is hereby acknowledged, and the love and affection I bear toward my wife, Lizzie Tillotson, of said county and state, party of the second part, do hereby at the decease of my body, and during the natural life of said second party and unto the heirs of her body, if then there be such, otherwise to my heirs, grant, sell and convey unto the said Lizzie Tillotson and her said heirs forever, within the provisions above written, the following described real property situate in Union county, South Dakota, to-wit, lots three and five (3 and 5) and the southwest quarter of the northwest quarter of section ten (10) in township ninety-two (92) of range forty-nine (49), according to government survey—

"To have and to hold the same together with all the hereditaments and appurtenances thereunto belonging or in anywise appertaining—

"And I hereby covenant with the said Lizzie Tillotson and her said heirs that I am lawfully seized in fee simple of said real

property—that the same is free from all incumbrances, except a mortgage of eight hundred dollars duly executed and of proper record securing said sum, the said mortgage being upon other and the above described real property, the other real property in said mortgage described to be first subjugated to the payment of said mortgage.

"That I have good right and lawful authority to sell and convey the above described realty, and I and my heirs will forever warrant and defend the title as hereby conveyed to the same, against all lawful claims, adverse to this title hereby conveyed.

"Witness my hand and seal this the 13th day of March, A. D. 1891.

"William Tillotson   [Seal.]"

This instrument was duly signed, sealed, witnessed, acknowledged, and recorded in the office of the register of deeds of Union county, S. D., on the day of its date. At the time of the execution thereof the family home of William and Lizzie was upon the real estate described in the deed; they having resided there ever since their marriage in June, 1888. Some little time after the execution and recording of the deed in question the family removed to Akron, Iowa, where they continued to reside until William's death in May, 1895. Prior to William's death, however, and in May, 1893, there had been born to William and Lizzie a second child, a daughter, Anna Mae. Five months after the death of William Tillotson, and in October, 1895, his widow Lizzie married one Joseph Beach, to which marriage there were born six children. Lizzie Tillotson Beach died in May, 1930, having been in undisputed possession of the real estate described in William Tillotson's deed of 1891 from the time of William's death in 1895 to and until her own death. There survived Lizzie Tillotson Beach her second husband, Joseph Beach (who died in April, 1931), her two children by William Tillotson (who may be conveniently termed the Tillotson children), and her six children by Joseph Beach (who may be conveniently termed the Beach children).

After the death of Lizzie Tillotson Beach, her two children by William Tillotson instituted the present proceeding in the form of an action to quiet title to the realty in question, alleging that they were the fee owners thereof. Upon joinder of issues and trial, the circuit court adjudged that the fee title to the property was vested,

not in the two plaintiffs, but in all eight of the children of Lizzie Tillotson Beach (being the two plaintiffs, the Tillotson children, and the six Beach children), as tenants in common. From so much of the judgment as determined each plaintiff to be the owner of an undivided one-eighth of the premises only (instead of an undivided one-half thereof, as plaintiffs claimed), the plaintiffs have appealed.

It is conceded by all parties that the deed in question creates, first, a life estate by reservation in William the grantor; second, a life estate in Lizzie; and, third, a fee remainder upon the termination of the two life estates. It is also conceded that if the heirs or heirs of the body of Lizzie take any interest in this property in remainder they take the same by purchase under the deed and not by descent from Lizzie; section 329, Rev. Code 1919, abrogating in this state the rule in Shelley's Case. The only difficulty in the case arises in connection with the construction and interpretation of the deed with reference to the grant of the fee remainder after the two life estates.

The deed recites " * * * I * * * do hereby, at the decease of my body, and during the natural life of said second party and unto the heirs of her body, if then there be such, otherwise to my heirs, grant, sell and convey. * * * " This language is somewhat garbled, and indicates upon its face that it was not the product of a skilled draftsman, but upon simple grammatical · analysis the proper interpretation seems fairly apparent. The phrase "at the decease of my body" is an adverbial phrase modifying the verbs "grant, sell and convey." The use of that phrase constitutes the reservation of the life estate in William the grantor and marks the point of time at which the grant to others is to begin. The clause "if then there be such" is a conditional clause further modifying the verbs "grant, sell and convey" in so far as those verbs relate to a gift to the heirs of the body of Lizzie. The adverb "then" in the conditional clause "if then there be such," as here employed, is a demonstrative adverb of time, and by custom, usage, and meaning refers to a precise, specified point or instant of time. When we examine the sentence structure for a specified point of time to which "then" may conceivably refer, we find one and one only, to wit, "at the decease of my body." It is true that between that phrase and the adverb "then" appears the words "and during the natural life of

said second party." Those words, however, do not and cannot express a point of time. They express length, duration or passage of time, and are merely the measure of the extent of the estate given by the deed to Lizzie, to wit, an estate during her natural life or for the term of her life. Suppose that there had been no gift of a life estate to Lizzie and that the deed had read, "I * * * do hereby at the decease of my body, unto the heirs of Lizzie's body, if then there be such, otherwise to my heirs, grant, sell and convey." Had the deed so read there could be no possible question about the proper interpretation of the language. So far as concerns the heirs of the body of Lizzie, we do not think that either the grammatical structure or the meaning of the language is in any manner changed by the creation and interpolation of the prior life estate in Lizzie. It is, of course, true that in a technical sense there could be no heirs of the body of Lizzie until Lizzie died, but manifestly those words were not here used in a technical sense to denote persons who would take by descent from Lizzie, but merely to designate and describe a class of persons who (subject to the prior life estate) were to take by purchase under the deed at the decease of the grantor's body "if then there be such." The gift to them could not be effective until the termination of Lizzie's prior life estate by her death and at the instant of her death and before entering into the enjoyment of the gift to them they would, of course, be technically heirs of her body, though perhaps not the sole heirs of her body at the date of her death. The postponing of the gift in enjoyment until Lizzie's death does not, however, prevent the earlier designation of the class and determination of its constituent members, and we think a proper construction of the instrument is identical with what it would have been if, instead of using the words "unto the heirs of her body, if then there be such," the grantor had said "unto her children, if then there be such." We think the grantor used the words "heirs of her body" in this deed only for the purpose of describing a class who were to partake of his bounty, membership in the class to be ascertained as of the mement "of the decease of [grantor's] body." By the language he used he designated and described those persons who, at the moment of grantor's death, would be presumptive heirs of the body of Lizzie; those who, if Lizzie also died at that instant, would be in law the heirs of her body. Cf. Heath v. Hewitt, 127

N. Y. 166, 27 N. E. 959, 13 L. R. A. 46, 24 Am. St. Rep. 438; In re Scott's Will (Sur.) 204 N. Y. S. 478; Tinder v. Tinder, 131 Ind. 381, 30 N. E. 1077; Powell v. Hayes, 176 Ark. 660, 3 S. W. (2d) 974; Tharp v. Yarbrough, 79 Ga. 382, 4 S. E. 915, 11 Am. St. Rep. 439; Roberson v. Wampler, 104 Va. 380, 51 S. E. 835, 1 L. R. A. (N. S.) 318; Whitworth v. Whitworth, 205 Ky. 247, 265 S. W. 801; Fullager v. Stockdale, 138 Mich. 363, 101 N. W. 576. And indeed to place any other interpretation upon the instrument before us would compel an utter disregard of the words "if then there be such." Construing the language of the deed as a whole therefore, it seems very clear that the primary gift of the fee was made to such children of Lizzie as might be in existence (whether born or en ventre sa mere) at the death of the grantor, which children would be presumptively heirs of the body of Lizzie from their birth and, at grantor's death, and would, in fact, become heirs of her body by her death before the termination of her prior life estate would permit them to enter into the enjoyment of the fee granted them. See section 330, Rev. Code 1919.

This construction of the deed from within its own four corners seems quite clearly the proper one, and, in fact, it seems so plain that it can hardly be said that the deed is ambiguous in this regard. If it should be thought that the deed is ambiguous, then we believe the construction we have above indicated is even further fortified. If the deed be considered ambiguous, resort may be had extrinsically to the purpose and object of the conveyance, the situation of the parties, and the intention of the grantor. The deed was without consideration other than love and affection, and, while it was a deed as distinguished from a will and probably irrevocable, nevertheless it was the instrument by which the grantor sought to control the disposition of this property after his death. It seems quite apparent, as well as natural, that the grantor might desire to make this gift to the use of his wife for life and then to their children, or if such children fail to survive their parents then to his other heirs, retaining the land in his own blood and to those who would be natural objects of his bounty. Cf. Frosch v. Monday, 34 App. D. C. 338. It is hardly conceivable that this grantor would intend to make a gift, under the circumstances here shown, to children whom his wife might have as the result of her marriage to a third person after his death, which children would be strangers to his

blood, not natural objects of his bounty, and much more remote from him than collateral heirs of his wife whom he very plainly did not intend to benefit in any case. To hold that by this deed children of Lizzie, born of another marriage after the death of William, gratuitously receive three-fourths of the property involved is to make a disposition of the property which the grantor assuredly never contemplated or intended. We very much doubt whether the language of the deed is properly susceptible of any such interpretation, and certainly we are still further from thinking that it imperatively requires any such interpretation. We are of the opinion that by this deed the fee remainder was given to those children of Lizzie who might be in existence, in contemplation of law, at the decease of the grantor, subject to the condition that they could not enter into enjoyment of the fee until Lizzie's death terminated her prior life estate. The appellants constituting the members, and the sole members, of the class thus described, and Lizzie's life estate having now terminated by her death, we think appellants are entitled to possession and fee title.

The judgment appealed from is reversed, and the cause remanded, with directions for the entry of conclusions and judgment upon the present findings in harmony with the views herein indicated.

POLLEY and WARREN, JJ., concur.

ROBERTS, J., and RUDOLPH, P. J., dissent.

ROBERTS, J. (dissenting). The facts are not disputed and the only question presented is the correct construction and effect to be given to the instrument which is in the form of a deed. Its granting clause reads: "For the consideration of the sum of One Dollar, in hand paid by second party, the receipt whereof is hereby acknowledged, and the love and affection I bear toward my wife, Lizzie Tillotson, of said county and state, party of the second part, do hereby at the decease of my body, and during the natural life of said second party and unto the heirs of her body, if then there be such, otherwise to my heirs, grant, sell and convey unto the said Lizzie Tillotson and her said heirs forever, within the provisions above written." Its habendum clause is in the usual form. Reference to the grantees in the covenants of title and against incumbrance is to "Lizzie Tillotson and her said heirs." It is conceded that this instrument conveyed a present interest in the real prop-

erty to Lizzie Tillotson, and that the full enjoyment thereof was postponed until after the death of the grantor. It was a present and not a future disposition of the property. Trumbauer v. Rust, 36 S. D. 301, 154 N. W. 801, 11 A. L. R. 10. The appeal is from that part of the judgment which decrees that the deed conveyed the remainder estate to the heirs of the body of Lizzie Tillotson, determined as of the time of her death, and which determines the proportionate interest of the parties in the premises.

It is the contention of the plaintiffs that the deed vested the remainder in them at the time of the death of William Tillotson; that the words in the deed, "if then there be such," relate to some previously fixed time in the deed, and that such time is "at the decease of my body," referring to the death of the grantor; that, moreover, there is a strong indication of the grantor's intent that the remainder should vest at his own death to be derived from the circumstances existing at the date of the execution of the deed; that William Tillotson had a son at the time of the execution of the deed born as the issue of a prior marriage and there were children, the issue of the grantor and grantee, and the possibility of other children; and that naturally William Tillotson left open the vesting of the remainder until his own death, thereby providing for after-born children. It is urged that the grantor referred to the children who were to take at his death as "the heirs of her body" for the reason that he desired to exclude his son, Charles, in the event there were children as the issue of the marriage between Lizzie Tillotson, the grantee named, and himself living at the time of his death, and that it is reasonable to conclude that the grantor intended that the property should vest in his issue and not to include the issue of his wife by another marriage.

Respondents on the other hand contend that the remainder-men take as purchasers under the deed and not as heirs of the life tenant by reason of section 329, Rev. Code 1919, which provides: "When a remainder is limited to the heirs, or heirs of the body, of a person to whom a life estate in the same property is given, the persons who, on the termination of the life estate, are the successors or heirs of the body of the owner for life, are entitled to take by virtue of the remainder so limited to them, and not as mere successors of the owner for life." And, therefore, since the life estate vested by the deed in the life tenant was not to be defeated or

avoided by any contingency, by the operation of section 330, Rev. Code 1919, which provides that in such event "it is to be deemed intended to take effect only on the death of the first taker," the remainder did not vest until the death of the life tenant.

It is a general rule of construction that a deed is to be interpreted in the same manner as any other contract so as to give effect to the intention of the parties if that intention can be ascertained. Sections 530, 866, Rev. Code 1919. Trumbauer v. Rust, 36 S. D. 301, 154 N. W. 801, 11 A. L. R. 10, supra. However, the intention of the parties cannot prevail against established rules of law and the legal operation of the deed. This court in Barbour v. Finke, 52 S. D. 11, 216 N. W. 592, 595, quoted with approval the following statement from Brown v. Brown, 66 Me. 316: "The law has prescribed certain plain rules to be observed in the execution of such important instruments as those by which the title to real property is transferred; and whatever courts may sometimes have done in their zeal to carry into effect the intention of parties, the law itself does not permit its salutary rules to be broken or bent to meet the exigencies of ignorance or negligence; deeming it better on the whole, that the intention of a party in disposing of his property should occasionally fail, than that its important and firmly established rules made and applied for the benefit of all be overridden."

The heirs of a person are those whom the law designates to succeed to his estate in case of intestacy as distinguished from those who take by will as devisees. 29 C. J. 288. In fact the meaning of this term and of "heirs of the body" became so firmly rooted in this and other jurisdictions that it required acts of Legislatures to repeal the application of the rule in the Shelley Case where a remainder is limited to the heirs or the heirs of the body of a person to whom a life estate is given. See section 329, Rev. Code 1919; Tscherne v. Crane-Johnson Co., 56 S. D. 101, 227 N. W. 479. When there are no qualifying or explanatory words or expressions in the context of a deed these terms are, like other legal terms, to be construed in their legal sense. The appellants contend, and the majority opinion holds, that the expression, "if then there be such," restricts the meaning of the term "heirs of the body"; that the membership in such class is to be ascertained as of the death of the grantor. The words "if then there be such" follow

immediately after the words "during the natural life of said second party and unto the heirs of her body" and precede "otherwise to my heirs." Since the alternative remainder was not vested, but contingent, being subject to the happening of an event when it would take effect, and since the life tenant could have no heirs prior to her decease, it clearly appears that the words, "if then there be such," refer to their survival of the life tenant. The language signifies that if the life tenant died without leaving issue the remainder to the heirs of the grantor would become operative. The California Court in Hall v. Wright, 17 Cal. App. 502, 120 P. 429, 431, had under consideration a grant "for the natural life of the said party of the second part and then to the heirs of her body begotten forever." It was claimed that the language of the deed and the fact that the age of the life tenant precluded the possibility of another heir indicated the intention of the grantor to vest the remainder at the time of his death. The court held that giving effect to sections of the Code of that state, identical with sections 279, 329, and 330, Rev. Code 1919, the remaindermen took a future contingent interest which would not become vested until the death of the life tenant, and that the word "then" referred to the time of the expiration of the life estate.

If in the instant case the grant was to "Lizzie Tillotson * * * party of the second part * * * during the natural life of said second party and unto the heirs of her body," it could not be doubted that title to the remainder would have vested upon the death of the life tenant. Section 329, 330, Rev. Code; County of Los Angeles v. Winans, 13 Cal. App. 234, 109 P. 640; Hall v. Wright, supra; In re Shoemake, 211 Cal. 457, 295 P. 830; Emmerson v. Hughes, 110 Mo. 627, 19 S. W. 979. The grantor desired to make provision for vesting of the remainder in other persons if the life tenant died without issue, and inserted the language "if then there be such (heirs), otherwise to my heirs." It is not the natural and reasonable interpretation of this provision for the vesting of the remainder in other persons upon failure of issue of the life tenant to hold that the annexation of these words are in explanation of the words "heirs of the body," indicating that the grantor meant to use them in a qualified sense as designating persons in whom he intended the estate to vest at his death, and to preclude the application of the clear and unambiguous provisions of

the statutes referred to. If the grantor intended to limit the remainder to his issue, he did not give expression to such purpose. I am of the view, therefore, that the construction given to the deed by the learned trial court was correct, and that the judgment should be affirmed.

RUDOLPH, P. J., concurs in the above opinion of ROBERTS, J.