## In re WALKER'S ESTATE.

No. 26582.    Feb. 2, 1937.

Rehearing Denied March 23, 1937.

two-thirds remaining to the children and others. The widow, as executrix, and the children individually appeal from that judgment, contending that the will should be invalidated in its entirety. If it is thus wholly invalidated, the children will inherit the remainder of the estate in fee simple; otherwise, they will be bound by the wishes of the testator and the property upon their deaths will pass on to their issue, testator's grandchildren, or to other designated beneficiaries.

They contend that the entire will should be construed as invalid, for these reasons:

(1) The widow by electing to take one-third of the estate, which was one-third of each specific tract of land in fee simple, instead of a life interest in the whole estate, changed the subject matter upon which the will was intended to operate and effectually destroyed the manifest plan and purpose of the testator, and, further, accelerated the vesting of the remaining estate.

(2) That paragraphs 7 and 7a of the will, providing for a trust for one of the children, attempted to create an invalid trust, and that the said trust being invalid, the entire will is thus made unworkable.

(3) That the will violates the rule against perpetuities.

The will is lengthy and somewhat complicated. It may only be understood by quoting its pertinent portions and parenthetical description of other portions, and is in material substance as follows:

"3. I hereby give and devise unto my wife, Minnie M. Walker, all of * * * (certain described real estate) * * * to have and to hold the same in fee simple and as her sole and individual property; and in addition thereto I give and bequeath unto my said wife, Minnie M. Walker, all money and personal property and all other evidence of indebtedness which I may own or possess at the time of my death.

"4. I hereby give and devise unto my wife, Minnie M. Walker, all of the residue and remainder of all real property owned by me, or interest therein, at the time of my death, to have and to hold the same unto my said wife, for and during her natural life, in trust, however, for the uses and purposes, upon the terms and conditions, and with the powers and duties, as follows: I direct that my said wife as such trustee shall have the exclusive right to hold, possess, manage, and control all of said real estate, and interests therein, and that she keep all of said real estate and interests therein leased so far as possible and to the best advantage and collect all of the rents,

W. Lee Johnson and Wilcox & Swank, for named plaintiffs in error.

Prentiss E. Rowe and Ed Waite Clark, as guardians ad litem, for James Rau and Norma Lee Rambo, minors.

PHELPS, J. James A. Walker made his will and died possessed of a considerable estate. By the terms of the will his wife and children were made the primary beneficiaries as life tenants, but were denied fee-simple title and the power of alienation. The wife (now widow) elected to take her statutory part under the laws of intestacy, rather than by virtue of the will, and the trial court accordingly decreed her an undivided one-third fee-simple interest in the properties comprising the estate, plus homestead, and then construed the will exactly in accordance with the directions contained therein, as to the children and as to the

issues and profits therefrom; I direct that my said wife as such trustee shall have the exclusive right and power to lease any and all of said real estate and interests for oil, gas or other mineral purposes for any term not exceeding (10) years, and so long thereafter as oil, gas or other minerals shall be produced therefrom in paying quantities, and that she collect all bonus money and royalties accruing to, from or under any of such oil, gas or other mineral lease, or leases; I direct that out of the rents, issues, profits, royalties and other income so collected by my wife as such trustee that she first pay and keep paid all taxes, insurance, and other proper charges against said real estate and interests, including the expense of repair thereon: I direct that one-third (⅓) of the residue and remainder of such rents, issues, profits, royalties and other income shall be retained by my said wife as her own and individual property, and that the remaining two-thirds (⅔) of such rents, issues, profits, royalties and other income be divided by my said wife as such trustee among my three children, Nell Walker, Blanche Walker Rambo, and Hugh A. Walker, equally. I further direct that said net income so accumulated by my said wife as such trustee shall be divided and paid by her to the respective parties entitled thereto semi-annually. **This paragraph to be effective only during the life of my said wife** and in the event she survive me.

"5. Subject to the provisions of paragraph 4 above, and **upon the death of my said wife,** I give and devise unto my daughter, Nell Walker, for and during her natural life, the following described real estate, to-wit:" (Here follows description of six separate tracts of real estate.) "I direct that my said daughter, Nell Walker, shall have the exclusive right to hold, possess, manage and control said real estate during her lifetime, and that she have the right to lease same for business or agricultural purposes, or such other purposes as the same may be suitable for. I direct that my said daughter, Nell Walker, shall have the exclusive right and power to lease said lands for oil, gas, or other mineral purposes, without being joined in said lease, or leases, by either of my other children; I direct that my said daughter, Nell Walker, collect all rents, issues and profits from said real estate and also all bonus and rental money from any oil, gas or mineral lease, or leases, thereon, and that all such rents, issues, profits, bonus and rental money shall be retained and owned by my said daughter, Nell Walker, as her sole and absolute property; I direct that all money accruing from royalties under and by virtue of any oil, gas or other mineral lease, or leases, on said real estate shall be divided equally among my three children, Nell Walker, Blanche Walker Rambo and Hugh A. Walker. On the death of my said daughter, Nell Walker, I hereby give and devise all of said real estate to her issue, if she have issue, and to the children of any such deceased child, by right of representation, share and share alike, adopted children being hereby excluded; but in the event my said daughter, Nell Walker, at the time of her death, leave no issue living or children of such issue, then and in that event I give and devise said real estate to the issue of my other two children, Blanche Walker Rambo and Hugh A. Walker, if she or he have issue and to the children of any such deceased child, by right of representation, share and share alike, and provided further if there be no such issue, or children of such issue, then I give and devise all of said real estate to my niece Eliza Schoonover, to my nephews, Harve Rau and Albert Rau, and to W. A. Marlow, the brother of my wife, or their heirs, forever, in equal parts.

"6. Subject to the provisions of paragraph 4 above, and upon the death of my wife, I hereby give and devise unto my daughter, Blanche Walker Rambo, for and during her natural life, the following described real estate, to wit: "(Here follows description of seven separate tracts of real estate.) Then follows the same provision as to her powers, life tenure, and disposition of this property upon her death, reciprocally, as was provided in paragraph 5 as to the other daughter.)"

"7. Subject to the provisions of paragraph 4 above, and upon the death of my wife, I hereby give and devise unto Leonard Cline, in trust, however, for the uses and purposes, and upon the terms and conditions, and with the powers and duties hereinafter stated, the following described real estate, to wit:" (Here follows description of six tracts of real estate.)

"I direct that the said Leonard Cline, as such trustee, shall have the exclusive right to hold, possess, manage, and control said real estate **during the lifetime, and for the use and benefit of my son, Hugh A. Walker,** and that he have the right to lease the same for business or agricultural purposes, or such other purpose as the same may be suitable for, to the best advantage possible, and collect all of the rents, issues and profits therefrom, and any and all other monies and funds that may become due and owing to my said son under any of the provisions of this will, after the death of my wife, and from any of the property described herein: and that he have the exclusive right and power to lease any and all of said real estate for oil, gas or other mineral purposes for any term not exceeding ten (10) years and as long thereafter as oil, gas or other minerals shall be produced therefrom in paying quantities; and that he collect all bonus and rental money accruing from or under any such oil, gas or other mineral lease, or leases thereon: and that all such rents, issues, profits, bonus

and rental money be first used to pay and keep paid all taxes, insurance and other charges against said estate, including the proper repair thereof; and that out of the residue and remainder thereof, being the net income from said trust estate, my trustee shall pay to my said son, Hugh A. Walker, if the monies in said trust estate are sufficient, the sum of One Hundred ($100.00) Dollars per month, and in the sound discretion of my said trustee, if the condition of said trust estate should warrant and it appears for the best interest of my said son, he may pay to him such additional sums of money from time to time as he may deem wise under all the circumstances, and all such moneys so paid to my son shall become his absolute property. I further direct that all moneys accruing from royalties under and by virtue of any oil, gas or other mineral lease, or leases, on said real estate shall be divided equally and paid to my two children, Nell Walker and Blanche Walker Rambo, as their sole and absolute property, and to my said trustee herein for the use and benefit of my said son, Hugh A. Walker, and subject to all of the trust provisions above mentioned, or herein following. And I further direct that in the event there should accumulate in the hands of said trustee a substantial surplus, after full payment of all charges against said trust estate as hereinabove directed, he shall invest such surplus in interest bearing government bonds. On the death of my said son, Hugh A. Walker, I hereby give and devise all of said real estate to his issue, if he have issue, and to the children of any such deceased child, by right of representation, share and share alike, adopted children being hereby excluded; but in the event my said son, Hugh A. Walker, at the time of his death, leave no living issue, or children of such issue, then and in that event I give and devise all of said real estate to the issue of my other two children, Nell Walker and Blanche Walker Rambo, if they have issue, and to the children of any such deceased child, by right of representation, share and share alike, adopted children being hereby excluded; and provided further if there be no such issue, or children of such issue, then I give and devise all of said real estate to my niece, Eliza Schoonover, to my nephews, Harve Rau and Albert Rau, and to W. A. Marlow, the brother of my wife, or their heirs, forever, in equal parts.

"7a. In the event of the death, resignation or refusal of the said Leonard Cline to act as such trustee, then I request that the proper court of Pawnee county, state of Oklahoma, having general equity jurisdiction, appoint some fit and proper person to act as such trustee with all of the powers, duties and limitations contained and imposed under paragraph 7 herein; and I further direct that my said trustee, or his successors, be required to execute such bond for the

faithful performance of his duties under said trust as said court may deem proper and order, and that the compensation to be paid said trustee hereunder shall be a sum of money not to exceed ten (10) per cent. of gross income from farm and agricultural lands and five (5) per cent. of gross income from all other property; and that upon the death of my son the trust provisions herein provided for shall cease and terminate.

"8. Subject to the provisions of paragraph 4 above, and upon the death of my wife, I hereby give and devise all of the rest, residue and remainder of any real estate, or interests therein, which I may own at the time of my death, not hereinbefore devised, unto the issue of my three children, Nell Walker, Blanche Walker Rambo and Hugh A. Walker, if they or either of them leave issue, and to the children of any such deceased child, by right of representation, share and share alike, adopted children being hereby excluded; and provided further if there be no such issue, or children of such issue, then I give and devise all of such real estate and interests therein to my niece, Eliza Schoonover, to my nephews, Harve Rau and Albert Rau, and to W. A. Marlow, the brother of my wife, or their heirs, forever, in equal parts.

"9. I hereby designate and appoint my said wife, Minnie M. Walker, as sole executrix of this my last will and testament, and direct that she be not required to give bond for the faithful performance of said trust."

Upon testator's death those surviving him were his widow and the three children named in the will, who were the only children, a granddaughter, and the other relatives named in the will. One of the daughters, Nell Walker, is 41 years of age, and unmarried. She has no children. The son, Hugh A. Walker, is 31 years of age, unmarried and without children. The remaining child, Blanche Walker Rambo, is married and has one child, Norma Lee Rambo, testator's granddaughter, mentioned above. The child is a minor, and a guardian ad litem was appointed for her. Also another guardian ad litem was appointed for James Rau, a minor son of Albert Rau, one of the conditional legatees, the said Albert Rau having died after the death of testator. It is these guardians ad litem, protecting the interests of these minors (who would inherit nothing if the will were invalidated), who insisted upon the enforcement of the will, and their views were adopted by the trial court. Said guardians ad litem are now the defendants in error in this court, and the widow, as executrix, and the children of testator are plaintiffs in error.

Does the widow's election to take under the statute of descent destroy the manifest

intention of the testator? Before that question can be determined it is first necessary to determine just what was the manifest intention of the testator. It is apparent from a reading of the will that his general intent was to so leave his property that his wife and children would be protected throughout their lives by the ownership of income-producing property of which they could not divest themselves, and that upon their deaths his grandchild or grandchildren would be provided for, regardless of the fortunes or misfortunes of the children or widow. Clearly, he intended to protect his wife and children against losing their source of livelihood through mortgages, unwise investments, imposition at the hands of unscrupulous persons, or as a result of their own possible prodigality, and all such causes and events which lead to the destruction of income-producing estates, examples of which are instanced in everyday life. His estate was of such size that he could reasonably anticipate the accomplishment of this worthy purpose, and in addition provide adequately for his grandchildren. The intent of the testator must be respected and enforced unless it is forbidden by some applicable rule of law, for in all such cases as this the right of such testator to lawfully dispose of his property as he sees fit is recognized and guaranteed by the law, even though some of those who would benefit by the will desire its destruction, to the detriment of their own children.

Certainly, the widow may not complain in her individual capacity, for she had her election. It is doubtful if as executrix she can be heard to complain of the manner in which the remaining property is to be distributed. Then in what manner has the will been made unworkable or unjust to the children; or productive of any inequality among them not contemplated by the testator? Instead of equally sharing two-thirds of the income from the entire estate, the widow's election has caused them to equally share the entire income from two-thirds of the estate. They are about the same. As stated above, when the widow elected she was by the trial court vested with fee title to an undivided one-third interest in each piece of property comprising the estate. The trial court further adjudged that she should act as trustee over the remaining two-thirds undivided interest, during her lifetime, and would not herself share in the income from that two-thirds except for a reasonable fee for serving as trustee, and that she would divide the income from that undivided two-thirds interest equally among the three children.

Let us compare the situation of the children, as it is, with what it would have been under the will had no election by the widow taken place. We think they are in substantially the same position as they would have been, barring certain business administrative difficulties which are not insurmountable. Under the will, and during the lifetime of the widow, two-thirds of the income from the entire estate would have been divided equally among them. For convenience and exactness in illustration, let us assume that the net income from the entire estate for any particular period of time would have been represented by the figure 27. Under the will the widow would have been entitled to one-third, or 9. The three children would have divided the remaining 18 among them, which would have been 6 to each. Now let us look at it as it is under the judgment, the widow having been granted an undivided one-third interest of the entire estate in fee simple. This reduces the income from the estate to two-thirds of what it would have been, or 18. But the widow does not participate in that two-thirds, which is divided equally among the three children. Each child thus receives 6, the same as would have been received if the widow had not elected. Of course, a reasonable fee is to be extracted for the widow's services as trustee, but the fact remains that for all practical purposes the widow's election has not defeated the testator's intent or made it impossible of accomplishment.

Section 1588, O. S. 1931, requires that of two modes of interpreting a will, that mode is to be preferred which will prevent a total intestacy. Section 1579 provides that a will is to be construed according to the intention of the testator, and that where such intention cannot have effect to its full extent, it must have effect as far as possible. The intent of the testator in this case, as to his children, was not that they have fee title to two-thirds of the estate, but that they have two-thirds of the income from the estate for life. This is substantially what the judgment provides, in spite of the widow's election, and the argument that the testator would not so have desired had he forseen this event is entirely without foundation. In fact the opposite is the only reasonable presumption, for if he had known that his entire estate would not eventually vest in fee in his grandchildren, does it follow that he would have wanted none of it to vest in them? And having placed it beyond the power of his children to divest themselves of the source of their income, does it follow that his fears in this respect would have been removed had he known that

at the widow's death his children would have only two-thirds of that source which he intended them to have and to draw from? Certainly these questions cannot be answered in the affirmative.

Contention is made that the widow's election has made the will "unworkable." The will itself is somewhat complex, and proper administration of the estate thereunder will require more care than in the case of a simple will, but it was not "unworkable", and has not been made so by the election. What difficulty will be encountered in administration was created by the terms of the will itself, rather than by the election of the widow. It is not ordinarily found that estates which are distributed in common, so that they are owned by persons each having an undivided interest therein, are incapable of administration. A sizeable percentage of estates are so divided and distributed, in probate.

It has been suggested that (1) possibly the widow or her grantee or devisee may seek partition, and that then, if so (2) possibly the property will not be partitionable in kind,—necessitating that the whole be sold, which would destroy the testator's plan or intent. There are a lot of possibilities in the future that may destroy the plan, for that matter. We judge the case on the facts as they are. We cannot decide this case on speculations as to the future, and even should it be conceded that such successive and dependent possibilities would upset testator's plan (which we do not decide), it would at the same time be evident that the subsequent partition proceedings, rather than the present election, would be the cause thereof. When we reach that part of the discussion involving the rule against perpetuities, infra, the question of future possibilities (as to the relative time of vesting of the fee estate) becomes very material, but that is because of the test of applicability of said rule against perpetuities, and has no bearing here.

It is pointed out by plaintiffs in error that there is but one grandchild and that if said grandchild should die before the widow dies, and there is no other grandchild born in the meantime, then under paragraph 8 of the will upon the death of the widow the residuary estate would vest in the distant kin who are named in the will. It is then said "this evidently was not the intention of the testator." We are at a loss for the basis of such a statement. It must very evidently have been his intention, for it is precisely what he directed in his will. The residuary estate is the entire real estate, after the death of the widow, minus that real estate specifically devised to the children as estates for their lives.

It is furthermore argued by the plaintiffs in error that it must have been the intention of the testator that his residuary property was to go "intact" to his grandchildren, and that it cannot go "intact" now, since the widow has taken one-third fee interest therein. The answer to this contention is that if the will is invalidated, there is no certainty that any of the residuary property will ever go to the testator's grandchild or grandchildren, while if it is enforced, two-thirds of it will do so, "intact" as a two-thirds. In such a case, should we hold that because it cannot now go intact in its entirety to the grandchildren, but only two-thirds of it can go to them, none of it should go?

Nor do we agree that the election by the widow must result in the acceleration of the vesting of the remainder, for the facts of this case do not fit the situation where that rule is usually applied. We must remember that there is no remainder in fee in this case at the death of the widow, and there is no such remainder of any kind which vests at all until the death of a child or children. In the ordinary case, where there is a life estate and a remainder over in fee, and the life tenant elects to take under the statute, such election sometimes has the effect of accelerating the vesting of the remainder in the remainderman. Not so here. The effect of the death of the widow in this case (and her election could cause no greater effect) is simply to split the entire estate into several life estates in the hands of the children, each having a life estate in a separate block of property. A further effect of the widow's death, under paragraph 8, is that the residuary estate (described above) will not pass to the children for life as does the main estate, but passes directly in fee to the issue of said children, or their issue, or, failing of such first issue, to the beneficiaries named in the will, certain more distant relatives. But though the death of the widow will cause the vesting of the residuary estate in the testator's grandchild or grandchildren, her election at this time will not accelerate such vesting, for under the will the **children** are to derive an income from said residuary estate **until the death of the widow.** This is made plain by the wording of said paragraph 8, which specifically subordinates the devise of the residuary estate (to the grandchildren) to the provision of paragraph 4, which paragraph 4 contemplates a division of the

income among the **children** until the death of the widow. Paragraph 8 does not vest the residuary estate in the grandchildren or grandchild until the death of the wife. What happens to the income therefrom in the meantime? It is to be divided "subject to the provisions of paragraph 4 above," and for this reason the election of the widow could not accelerate the vestment of said residuary estate in the grandchildren. It was easily within the power of testator to provide that it vest immediately, yet he did not so choose. He specifically provided otherwise.

The plaintiffs in error next attack the validity of the trust provided for the son, Hugh A. Walker, in paragraphs 7 and 7a. The provisions concerning Hugh Walker are the same as those concerning the other children, his sisters, except that for him a trustee was provided. It is said that the trust does not specify the period of duration and that there is no limit to the period of the life of the beneficiary, Hugh A. Walker, provided in said paragraphs creating the trust. The paragraphs appear above, as they appear in the will. It is very apparent that testator limited the trust to the lifetime of Hugh A. Walker, and expressly so, and provided that the trust provisions should cease and terminate upon the death of said son. Section 11821, O. S. 1931, permits a trust which is created by a will duly executed as required by the law of the state, and requires that an express trust shall be limited in duration either to a definite period of not to exceed 21 years, or to the period of the life of the beneficiary. Hugh Walker was the beneficiary. It was expressly limited to his life. There is no merit to this contention.

Plaintiffs in error contend that the will violates the rule against perpetuities. Stated broadly, the rule against perpetuities is that executory limitations are void unless they take effect, of necessity and in all possible contingencies, within the period of a life or lives in being at the death of the testator, and 21 years thereafter. An estate to vest in the future, which may possibly not vest until after the expiration of a life or lives in being, plus 21 years, could not validly vest, and an instrument attempting such purpose would be invalid, for it would be in violation of the rule. Sections 11759, 11756, O. S. 1931; Phillips v. Chambers, 174 Okla. 407, 51 P. (2d) 303.

The rule must be applied even if there is a possibility that the estate would vest beyond the period prescribed by the rule; and probabilities or improbabilities of the time of such future vesting are unimportant and immaterial. If under any possible contingency which may arise the vesting of the future estate will take place beyond the life of one in being at the date of the testator's death, plus 21 years, the attempted conveyance or disposition is invalid.

It therefore becomes necessary to inquire what may happen under this will, in that respect, in the light of the rule. There is probably no better way of determining this question than to examine the will, a paragraph at a time, and the paragraphs as they affect the operation of other paragraphs and the entire will. Paragraph 4 devises the real property to the widow to hold in trust for herself and the three children during her lifetime. It directs the manner in which she shall divide the income among the children and herself. Paragraphs 5, 6, 7, and 7a devise to the children separate blocks of property, upon the death of the widow, said children to hold such property in trust, appropriating the proceeds therefrom to their own use. If any child dies, the specific land committed to his or her care goes to his or her issue, and if there be no issue, then not to the other children but to the issue of those other children, or the issue of deceased children of those children. It is more easily explained if we illustrate the working of the will in terms of one of the children: If Hugh Walker dies with issue, the land which he had held in trust since the death of his mother descends to his issue in fee. If he dies without issue, it descends to the issue of his sisters. The trial court correctly held that the issue of his sisters shall be determined **as of the date of Hugh's death.** This was in accordance with the spirit if not the letter of sections 1598 and 1599, O. S. 1931, and the well-established rule of law that if a contrary intention does not clearly appear, an interest will always be construed to vest at the earliest possible time consistent with the testator's intention. Tiffany R. P., 499; 40 Cyc. 1477; 69 C. J. 246, 249, 597-602. We are not without evidence of what the intention of the testator was in this respect. In paragraph 7 the testator provided that if Hugh A. Walker "at the time of his death" leaves no living issue or children of such issue, his part should then go to the issue of the other two children if they have issue, and to the children of any such deceased child of theirs. It plainly appears to have been his intention to ascertain the class and persons to whom Hugh's estate should go, as of the date of Hugh's death. As stated above, such is the rule of law anyway, un-

less the contrary intention is shown. See the many hundreds of decisions to that effect cited at 69 C. J. 599 to 602.

All of the children were "lives in being" on the date of testator's death; and for instance, when Hugh dies, if he has no issue, that part of the estate which had been committed to his care will vest immediately in the issue of the other children, or if they have no issue, then it will vest in the more distant relatives named in the will. Certainly this is within 21 years after a life in being at the time of testator's death, for the vesting is immediately upon the death of any child of testator's. The plaintiffs in error proceed upon the theory that when one of the children dies it cannot at that time be determined whether the other children might in the future have issue of their own, and that if they do have additional issue, such issue may not be born until later than 21 years after Hugh's death. Plaintiffs overlook the fact that the issue of the surviving children are determined as of the date of Hugh's death, and the property vests in them immediately upon his death, as they are at that time. Any other or contrary ruling would be in violation of our statutes hereinbefore cited, and the settled rule of law relating to "early vesting" which was discussed above.

We are convinced that the county court, and on appeal, the district court, were correct in their construction of this will. In spite of the widow's election, it appears that the general plan and purpose of the testator can be effectuated. It likewise is apparent that the construction given the will by the trial courts was proper and that under such construction the will does not violate the rule against perpetuities. A total intestacy is thus avoided, the widow obtains all she has sought and to which the law entitles her, the children are adequately provided for during their lifetime, and the grandchild or grandchildren have fortunately been protected by their guardians ad litem, and will receive the estate which otherwise they would have lost.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, BUSBY, and CORN, JJ., concur. HURST, J., disqualified. WELCH and GIBSON, JJ., dissent.