[1] Reported in 290 N.W. 312.
This is an appeal from a judgment of the district court of Ramsey county directing the distribution of the one-third share of the income from the trust created in the will of Carrie C. Murray which by the terms of the testamentary trust had gone to Neel C. Murray during his lifetime. The court directed its distribution to Jane Murray Disque, Doris Murray Vance, and Gerard A. Murray, the respondents herein. Appellant is the remarried widow of William P. Murray, who was a son of Neel C. Murray and grandson of the testatrix. William was a brother of the respondents and died prior to the remarriage of his mother, Lucy Alexander Murray, who survived her husband as beneficiary of the trust during her widowhood.
Testatrix, Carrie C. Murray, owned valuable real estate in the loop district of the city of St. Paul. She died in March, 1911, and her will was admitted to probate in Ramsey county in April of that year. A final decree was entered in her estate on June 16, 1914, assigning to Winifred [Winnefred] Murray Deming, Lucy Alexander Murray, Fenton C. Murray, and Hermon W. Phillips, as trustees, her entire estate consisting of real estate "in trust however, upon the terms, conditions and limitations * * * expressly contained in said will." The testatrix began her will by announcing her purposes as follows:
"I, Carrie C. Murray, being of sound mind and wishing to leave my property so that my children, and grandchildren after them shall derive most benefit out of it, do hereby * * * leave all * * * the 'Golden Rule Property' in trust, and desire, * * *"
Then, by paragraph one she provided that the trust should endure until the death of the last survivor of her children and the wives of her sons; and by paragraph two she directed that if her husband should survive her the entire net income of the trust be paid to him "for his use and benefit and the benefit of our children and our grandchildren." Paragraphs three, four, and fire read as follows: *Page 9 
"3. After the death of my husband William Pitt Murray should he survive me, I desire that the net income derived from such property, or the proceeds thereof, shall be divided into three equal parts, or shares. One share to be paid to my son Neel C. Murray, for his use and benefit and the benefit of his wife and children. One share to be paid to my daughter Winnefred Murray Deming for her use and benefit and the benefit of her children. One share to be paid to my son Fenton C. Murray for his use and benefit and the benefit of his wife and children.
"4. I desire that my Executors and Trustees shall pay to each child direct the share of such income belonging to such child and it shall not be liable for any debt or obligation which may have been made previous to my death. However, should the Executors and Trustees deem it for the best interests of any of my children or grandchildren to pay the amount due such child or grandchild to a guardian for the benefit of such child or grandchild, they may do so.
"5. Should Lucy Alexander Murray wife of my son Neel C. Murray outlive my son I desire that his share of said income shall be paid to her for the benefit of herself and children so long as she remains unmarried. In the event of her remarrying Idesire the income to be paid direct to the grandchildren, or to a guardian for their benefit." (Italics supplied.)
Paragraph six made a similar provision for Fenton's wife.
Neel C. Murray died in 1914, before the final decree of the probate court was entered. His widow, Lucy Alexander Murray, was appointed trustee in his stead. She received one-third of the income and used it for her benefit and for the benefit of her children until 1938, when she remarried. Since that time the trustees have divided this one-third share into four equal parts, paying one part to each of the following children of Neel and Lucy: Carrie Jane Disque, Doris Vance, Gerard A. Murray. The other one-fourth part of this one-third interest has been held by the trustees abiding an order by the court. They petitioned the district court of Ramsey county for a determination of the disposition of the *Page 10 
remaining one-fourth, with the result above stated, and this appeal followed.
The fourth part would have gone to William P. Murray, the other child of Lucy and Neel, were he living. However, he died in 1938 prior to his mother's remarriage and left a widow, Marjorie Howard (this appellant, who has since remarried) and no children. Appellant's contention is that the interest of her husband, William P., vested upon the death of the testatrix, and that his interest was devisable and descendible. A family tree appended in a note indicates the relationship insofar as relevant.[2]
The trial court held that the remaining one-fourth interest should be distributed to the respondents, the surviving three children of Neel C. and Lucy Murray. Each side of the controversy here presented asserts that the intent of the testatrix is clear and requires no resort to rules of construction, but opposite conclusions are arrived at. *Page 11 
Appellant contends that under R. L. 1905, §§ 3202, 3224, 3250, and 3251[3], which appear in 2 Mason Minn. St. 1927 as §§ 8043, 8065, 8091, and 8092, the gift to the grandchildren vested at the death of the testatrix, subject only to be opened up to let in after-born grandchildren; that being vested the estate possesses the characteristics of devisability and descendibility and that she is entitled to her husband's share as his heir and devisee. Respondents claim that the intent of the testatrix prevails over the statutes cited and that, even though the gift be deemed vested, still the members of the class by the terms of the trust are to be determined at the termination of the prior interest — in this case the *Page 12 
remarriage of their mother, and that the intent of the testatrix was so to limit beneficial interest in the income to the grandchildren.
We first dispose of the question whether the statutes cited by appellant prevented the testatrix from directing when the remainder should vest. In Levings v. First Nat. B. T. Co.192 Minn. 143, 148, 255 N.W. 828, 830, the same question arose, and § 8043 was invoked as controlling. This court held:
"We do not think this statute was intended to control a testator in respect to the time that a bequest should take effect or vest. The important matter here is not any statute, but the language of the will. It is not unlawful to postpone the vesting of the remainder until the life estate ends."
This court held that the plainly expressed intention of the testator must prevail. To like effect is In re Trust of Bell,147 Minn. 62, 179 N.W. 650, and cases cited. There, as here, the testator may have entertained a different purpose as to the income from that as to the corpus.
Does the will here under consideration evince an intention on the part of the testatrix that the then living grandchildren should be the beneficiaries should their mother remarry, when it is provided that they shall come into the enjoyment of the income formerly paid to her. The trial court found that such was her intent, and we think that it was justified in so concluding. Taking the will by its four corners, it is quite apparent that so far as income from the property was concerned the testatrix intended to keep it in the bloodstream of her own family until it reached her own grandchildren. The announcement of purpose at the beginning of the will; the limitation of purpose put upon each succeeding beneficiary for the benefit of the children and grandchildren: the omission of Winifred's [Winnefred's] husband; the common desire of man to favor his own kin; and the provision for Lucy, limited to her widowhood and not only for her benefit but for the benefit of the grandchildren — all indicate a clear intention *Page 13 
to keep the benefits to her own grandchildren and to exclude those outside the bloodstream except while motherhood operated to the benefit of the grandchildren.
In the case of Savela v. Erickson, 138 Minn. 93, 97,163 N.W. 1029, 1031, while the question there presented was whether grandchildren born after the testator's death should be included in the benefits provided for grandchildren, this court held, following the greater number of authorities:
"That where a gift is to a class, as children or grandchildren, and the right of enjoyment is postponed beyond the time that the gift vests in right, and until the termination of a preceding estate, the members of the class entitled to take will be ascertained as of the time when the intervening estate is determined and the gift to the class vests in enjoyment." (Citing a large number of cases.)
We are quite clear from the tenor of the will and its many expressions of intent to leave the testatrix' property so that it would benefit her children and grandchildren, that she did not intend that the income therefrom should be paid to the widow of a deceased grandchild.
The appellant relies largely on the theory of law which he asserts was expounded in Minnig v. Batdorff, 5 Pa. 503, where it was held that a contingent remainder in land vested as soon as the beneficiaries were in esse. We are not satisfied that the later Pennsylvania cases support the appellant's theory in regard to a situation like that presented in the case at bar. Nixon's Estate, 306 Pa. 261, 159 A. 442; Wood's Estate, 321 Pa. 497,184 A. 13. It seems clear that even there the intent of the testator prevails and that under circumstances similar to those before us the same rule would apply as we have applied in this case. In Johrden v. Pond, 126 Minn. 247, 148 N.W. 112, relied upon by appellant, the beneficiaries were named individuals. We think the provisions of the will are clear and require no construction and were properly interpreted by the trial court.
The judgment appealed from is affirmed.
[2] Carrie C. Murray
_______________________________________________________
1/3 1/3 1/3
Fenton C. Murray Neel C. Murray Winifred [Winnefred] Murray
(living) (d. 1914) (living)
m. Lucy Alexander[*]
(rem. Nov. 1938)
________________________________________________
Carrie Jane Doris Gerard A. William P.
(living) (living) (living) (d. 1938)
m. Marjorie Howard[**]
[*] Since her remarriage November, 1938, this 1/3 share has been paid directly as follows: 1/4 to Carrie Jane, 1/4 to Doris, 1/4 to Gerard A. The fourth part, which would have gone to William P. had he survived, is held by trustees subject to order of court. His widow** claims she is entitled to it as his heir and devisee.
[**] Appellant. She has since remarried and is now Marjorie Murray Long.
[3] Statutes referred to above read as follows:
R. L. 1905, § 3202 (2 Mason Minn. St. 1927, § 8043).
"Future estates vested or contingent — Future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are contingent while the person to whom, or the event upon which, they are limited to take effect remains uncertain."
R. L. 1905, § 3224 (2 Mason Minn. St. 1927, § 8065).
"Qualities of expectant estates — Expectant estates are descendible, devisable, and alienable in the same manner as estates in possession."
R. L. 1905, § 3250 (2 Mason Minn. St. 1927, § 8091).
"Devise of lands, when it creates only a power — A devise of lands to executors or other trustees, to be sold or mortgaged, when such trustees are not also empowered to receive the rents and profits, shall vest no estate in the trustees; but the trust shall be valid as a power, and the lands shall descend to their heirs, or pass to the devisees of the testator, subject to the execution of the power."
R. L. 1905, § 3251 (2 Mason Minn. St. 1927, § 8092).
"Profits of lands held in trust — liable to creditors, when — When a trust is created to receive the rents and profits of lands, and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum necessary for the education and support of the person for whose benefit the trust is created, shall be subject in equity to the claims of his creditors, in the same manner as other personal property which cannot be reached by an execution at law." *Page 14