SMITH, Appellant v. DOLAN et al., Respondents

(197 N.W.2d 416)

(File No. 10967. Opinion filed May 9, 1972)

**McCann, Martin & Mickelson,** Brookings, for plaintiff and appellant.

**Alan F. Glover,** Brookings, for defendants and respondents.

BIEGELMEIER, Judge.

Plaintiff's action to partition real estate under SDCL 21-45 gave rise to this controversy. William H. Smith was the owner of 160 acres of land in Brookings County on the date of his death

in 1933. In conformity with the terms of his will the county court entered a Decree of Distribution which distributed the land as follows:

"To John H. Smith * * * for his use and benefit during his life time, viz:

(here follows the legal description of the 160 acres and a tract in North Dakota)

the said John H. Smith and his wife to have the use and benefit of said real estate during their lifetime and upon the death of said John H. Smith and his wife, the real estate to go to the heirs of the body of said John H. Smith, and if there be no heirs of his body, then the same to go to the children of said William H. Smith, deceased, by right of representation."

The John H. Smith named in the decree as one of the life tenants was the son of the testator. He died July 10, 1951, leaving no heirs of his body. His wife, the other joint tenant, survived him; she died August 2, 1970.

The question involved is whether the time of ascertainment of the persons in the class of children is 1933, when testator died, July 10, 1951, when the life tenant John H. Smith died (which date the trial court determined was applicable), or August 2, 1970, the date his wife, the last life tenant, died.[1]

██ It is stated as a general rule of testamentary construction that absent clear and unambiguous indications of a different intention on the part of the testator, a class described as testator's heirs or next of kin to whom a remainder interest is given by will is to be ascertained as of the date of testator's death. The reason frequently given is the preference of the law for a construction which will vest an estate at the earliest opportunity. See 57 Am.Jur., Wills, §§ 1218, 1274, 1279; 28 Am.Jur.2d, Estates, § 286;

---

1. There are a few scattered cases in which the date of execution of the will was recognized as the time of ascertainment of membership of the class. See 6 A.L.R.2d 1343, 1346 and 1348. Nothing in the will or circumstances here involves that possibility.

96 C.J.S. Wills § 932; 49 A.L.R. 177; 127 A.L.R. 604, and 169 A.L.R. 208, where voluminous authorities are collected. SDCL 29-5-27 adopts, as do others hereafter quoted, this commonlaw rule by providing: "Testamentary dispositions * * * are presumed to vest at the testator's death." This general rule, which favors early vesting, is not a rule of substantive law, but a rule of interpretation or construction which has been adopted by the courts as one means of ascertaining the intention of the testator as expressed in the will. 57 Am.Jur., Wills, § 1279; 28 Am.Jur.2d, Estates, § 252. It has been said the rule is subordinate to the testator's intention. See 96 C.J.S. Wills § 936.

The testator's intention is, of course, controlling, SDCL 29-5-1, and our task is to discover that intention, Briggs v. Briggs, 73 S.D. 500, 45 N.W.2d 62, and determine what meaning is to be given to the language used.[2] In re Patterson's Estate, 69 S.D. 374, 10 N. W.2d 754, 149 A.L.R. 965. It has been said it is an endless and hopeless task to try to reconcile the judicial decisions on the various phrases of the persons who are to take property, whether the interest is vested or contingent and the time of ascertainment of the membership of the takers, Buchan v. Buchan, 254 Iowa 566, 118 N.W.2d 611, 100 A.L.R.2d 1063, and authorities, supra, and that precedents may be of little value, Burton v. Kinney, 191 Tenn. 1, 231 S.W.2d 356, 19 A.L.R. 2d 366.

■ Two statutes define vested and contingent interests; they and others[3] noticed are:

SDCL 43-3-10. "A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property, upon the ceasing of the intermediate or precedent interest."

---

2. We are mindful the construction of a court decree is involved, but, as it was in the wording of the will, the same considerations apply. See In re Hartson's Estate, 218 Cal. 536, 24 P.2d 171; 197 N.W.2d 27.

3. Other definitions of contingent remainders from Blackstone, Fearne and 2 Washburn, Real Property, 4th Ed., p. 559, may be found in the opinions cited and in 28 Am.Jur.2d, Estates, § 219, and 96 C.J.S. Wills § 929.

SDCL 43-3-11. "A future interest is contingent while the person in whom, or the event upon which, it is limited to take effect remains uncertain."

SDCL 29-5-28. "A conditional disposition is one which depends upon the occurrence of some uncertain event, by which it is either to take effect or to be defeated."

SDCL 29-5-29. "A condition precedent in a will is one which is required to be fulfilled before a particular disposition takes effect."

SDCL 29-5-30. "Where a testamentary disposition is made upon a condition precedent, nothing vests until the condition is fulfilled * * * ".

The court had occasion to consider the two statutes first cited in Murphy v. Connolly, 81 S.D. 644, 140 N.W.2d 394. There a 1914 decree distributed land to testatrix's son, Frank Carey, for life with remainder to his (the life tenant's) heirs. The issue between two judgment creditors of the life tenant's son was whether the remainder to the heirs of the life tenant vested on the death of the testatrix in 1914 or in 1929 when the life tenant died. The court held the remainder was contingent and vested only on the death of the life tenant, at which time the judgments became simultaneous liens. Who the heirs of Frank Carey might be at his death was uncertain. Here it was not only uncertain who the heirs of the body of John H. Smith would be, but until his death whether there would be any. As it happened there were no heirs. Under the statutes and authorities cited it is clear the words "upon the death of said John H. Smith and his wife, the real estate to go to the heirs of the body of said John H. Smith" were a devise of a contingent remainder.[4] However, the testator did not intend title to revert to his estate and vest in testator's children at the time of his death. Use of the term "by right of representation" indicates he expected some time to elapse and changes thus be made in the

---

4. The Restatement, Property, § 157, has dropped the use of the term "contingent remainder" in favor of the term "a remainder subject to a condition precedent". See 28 Am.Jur.2d, Estates, § 219, n. 2. We continue use of contingent remainder for its brevity and past usage.

members of the class and, while under the law of succession the property would thus devolve, he desired to make that definite. If the ascertainment of the class of his children was to be ascertained as of testator's death, his son and life tenant, John H. Smith, would be entitled to his share of the very property in which he and his wife were only given a life estate. That also negates somewhat the intention of testator's death as the time of ascertainment. Cf. In re Rutan's Estate, 119 Cal.App.2d 592, 260 P.2d 111, and In re Wilson's Estate, infra, cited in Rutan. Having concluded the remainder to the heirs of the body of John H. Smith was contingent, the fee title or remainder did not vest at the time of testator's death.[5]

Plaintiff claims the time for ascertainment of the persons entitled to take the remainder is August 2, 1970, when the last life tenant, Mary Jane Smith, died and not (as the trial court held) on July 10, 1951, when her husband, John H. Smith, died. He quotes SDCL 29-5-17 in support of his views. That section provides:

**"Time relation of references to death or survivorship.** — Words in a will referring to death or survivorship, simply, relate to the time of the testator's death unless possession is actually postponed, when they must be referred to the time of possession."** [6]

As California has the same statute, plaintiff then cites In re Winter's Estate, 1896, 114 Cal. 186, 45 P. 1063; In re Wilson's Estate, 1920, 184 Cal. 63, 193 P. 581; In re Hartson's Estate, 1933, 218 Cal. 536, 24 P.2d 171, and In re Rutan's Estate, 1953, 119 Cal.App.2d 592, 260 P.2d 111. The time for ascertaining the members of a class to whom a remainder is given and thus when title shall vest may be altered by statute. 57 Am.Jur., Wills, § 1279; 49 A.L.R. 180 for text of the Pennsylvania statute.

---

5. As to the abode of the fee during the period of the contingency, it is said to remain in the one creating the remainder or in abeyance, in gremio legis, in the custody of the law or in nubibus, literally, — in the clouds. 28 Am.Jur.2d, Estates, §§ 223-224. This view must be considered and reconciled with our views of title vesting under SDCL 29-5-27 and see In re Estate of Kappenmann, 82 S.D. 91, 141 N.W.2d 780.

6. It originated at § 598 of the 1865 Report of the Committee appointed to prepare a civil code for the State of New York, commonly referred to as the Field Code. Parts of the code including this section were adopted by California (Cal.Civ.Code, § 1336, now § 122, Probate Code), Oklahoma (§ 170, Title 84, Okl.Stats.) and North Dakota (§ 56-05-20, N.D.Cent. Code).

Mindful of the admonition in Burton v. Kinney, supra, that precedents may be of little value and that it is almost an endless, hopeless task to reconcile them (Buchan v. Buchan, supra) we review and consider them.

In Winter a life estate in a ranch was given to testator's wife, then it was to be sold and proceeds divided between his surviving brothers and sisters. The court, citing English and American decisions, held survivorship related to the time of the sale of the land and division of the proceeds. The court then quoted but apparently did not rely heavily, if at all, on § 1336, Civ. Code (our SDCL 29-5-17, supra) as it wrote:

> "Whatever may be the meaning of the latter clause of this section, it is enough for the purposes of this appeal to say that it is not in conflict with any of the authorities above cited. Taken literally, it would seem to remove all doubt in this case that the words in the will referring to survivorship relate to the time of the sale of the ranch, since possession of the legacies (in money) to the brothers and sisters was actually postponed until such sale."

The Wilson will gave a life estate to testatrix's only son, the remainder to his living children and, if none, " 'Then upon his [her son's] death * * * (it) shall be distributed among my heirs' ". On the date of the will testatrix had several brothers, sisters, nieces and nephews who, excluding the son who was her only heir, would then be heirs. The son died childless leaving his widow. Based largely on testatrix's use of the word "heirs", the court held she did not intend her son to be within that term but meant her brothers, sisters, etc. The court stated this conclusion excluded the son from the term "heirs" and denied the son's widow any share in the remainder. Then by dictum or an advisory opinion as to the disposition wrote:

> "we think it clear that the intention was that they (the heirs) should be determined as of the date of the termination of the life estate. * * * If the heirs are to be

determined as of the date of the termination of the life estate, as we think is the proper construction of the will * * *." etc.

Section 1336 was not mentioned.

Hartson's will provided certain property be held in trust with rather complicated provisions of monthly payments of the trust income. One-sixth was payable to a son on whose death it was to be paid to his legal heirs, if any living at that time; if not, the share was to be divided between testatrix's remaining living children. On the son's death, payments were thereafter made equally to his widow and his daughter as his legal heirs. However, on the death of the widow, a difference arose as to the 1/12 payments formerly paid to her — were they to be paid to the son's daughter and his sole heir or, as the opinion phrased it, to the legal heirs and devisees of the widow who were her two sisters. The court referred to intent and preference to those of the blood rather than outsiders, quoted § 122 Cal.Probate Code (formerly § 1336 Civ. Code) and after declaring payments on the son's death were properly made to the widow and daughter as they were members of the class of the son's living heirs, stated when the widow died the daughter was the only member of the class in existence at the time the income was to be distributed. It wrote:

"under section 122 * * * we must interpret the will to mean that the income is to be paid to the heirs of a deceased child living at the time of the distribution of the income."

Rutan also involved distribution of income from a trust created by a will which provided in the event testatrix's sole heir, Donna, who was also a devisee, died before age 50 the corpus of the trust was to be distributed to the heirs-at-law of testatrix. The court, relying on the Wilson opinion, held those heirs excluded Donna, her only heir at the time the will was drawn and her death. Quoting extensively from Wilson the court wrote:

"The court then held that the son's widow was not entitled to take, stating, 184 Cal. at page 71, 193 P. at

page 584: '* * * we think it clear that the intention was that they [the heirs] should be determined as of the date of the termination of the life estate.'

"Likewise here it is clear that testatrix intended that 'my heirs-at-law' should be determined at the death of Donna 'during the existence of the trust, leaving no children.'

* * * * * * * *

"All of this leads to the conclusion that by the terms of her will, testatrix clearly indicated her intention to exclude Donna from the general class of heirs at law. And that by use of the words 'my heirs-at-law', testatrix had reference to those persons answering that description at the termination of the respective interests in the trust estate.

"It follows that the one-third interest, hereinbefore referred to, is distributable to the heirs at law of testatrix as determined at the death of Donna Rutan."

Section 122, Probate Code, was not mentioned.

We summarize the California opinions from which plaintiff may take some comfort as well as claim support by the result reached, in that benefits from the will were held to accrue at a time when the precedent estate terminated.

In Winter, though it quoted the statute, the court did not base its decision on it but rather on the intention of testator gathered from the direction in the ·will that on the death of the life tenant the ranch be sold and **proceeds** divided among testator's surviving brothers and sisters. In Hartson the court interpreted the statute to apply to continuing **monthly** payments from the income of a trust, also relying largely on testatrix's intent. The statute was not mentioned in either the Wilson or Rutan opinions. In Wilson the court based its result on the intention of testatrix theory and quoted from and relied largely on the Wilson opinion and theory in Rutan.

The only other opinion we have found which mentions our SDCL 29-5-17 is In re Walker's Estate, 179 Okl. 442, 66 P.2d 88. Oklahoma adopted the predecessor of our statute when it became a state. The Walker will gave a life estate in trust to his wife, then to certain sons in trust for their lifetimes. As to the son, Hugh, the will provided if he died with issue the property descended to them in fee; if he died without issue it descended to the issue of his sisters. The court wrote:

"The trial court correctly held that the issue of his sisters shall be determined as of the date of Hugh's death. This was in accordance with the spirit if not the letter of sections 1598 and 1599, O.S. 1931 (84 Okl.St.Ann. §§ 170, 171), and the well established rule of law that if a contrary intention does not clearly appear, an interest will always be construed to vest at the earliest possible time consistent with the testator's intention."

As of the July 10, 1951 date of ascertainment of the members of the class of the children of testator, title to the land would have vested in 1/6 shares to testator's five children and a child of a deceased daughter; on that basis Fabian Smith, one of the children, would have then been the owner of a 1/6 share to which his wife Gladys succeeded when he died on January 6, 1969. If the August 2, 1970 date applies, Fabian Smith, having died prior to that date, was not then an heir and had no interest in the land to which his widow Gladys could succeed.

The trial court was of the opinion the remainder, limited to the children of William H. Smith, was contingent on the death on July 10, 1951 of John H. Smith without heirs of his body, and upon his death the remainder vested in children of testator then surviving and the grandchild mentioned by right of representation. In accord therewith the court's judgment declared Gladys Smith owner of a 1/6 interest.

We agree with that construction. It is clear the will manifests testator's initial intention and indeed a requirement the land go to heirs of John's body. That possibility disappeared with his

death. A similar question was presented in Dean v. Lancaster, 233 S.C. 530, 105 S.E.2d 675, where the life estate was given to a son and "his wife" during the life of the survivor and after their deaths to go to their children; if they died without leaving children the property was to revert to testator's estate and be divided among his heirs. The son died in 1910 without children. His widow was still living in 1958. The court wrote:

> "when it conclusively appeared in 1910 that Alfred and Gertrude Dean would have no children, the contingent remainders were converted into vested ones and became transmissible."

At John's death there were "no heirs of his body" nor could there be.[7] Testator's declaration immediately after that clause was in that event the property then go to testator's children by right of representation. When the possibility of children was conclusively established, we believe testator intended the title vest in the substituted remaindermen, his heirs.

This result is consonant with Murphy v. Connolly, 81 S.D. 644, 140 N.W.2d 394, where it was held title vested when the contingency — who the life tenant's heirs were — became certain; so here, the title vested when it became certain John would have no heirs of his body. See also Judges Roberts and Rudolph dissenting in Tillotson v. Carpenter, 61 S.D. 570, at 576, 250 N.W. 339, at 341.

In the Tillotson appeal the "somewhat garbled" language of grantor's deed conveyed a life estate to his wife "at the decease of my body" and the remainder "unto the heirs of her body, if then there be such". At the time of the execution of the deed two children born of his marriage to Lizzie, the grantee, were alive. After grantor's death Lizzie remarried and six children were born of this second marriage. The majority opinion stated the deed was not ambiguous, that the words in the deed "at the decease of my body" designated the time ascertainment of the membership

---

7. Excepting a child en ventre sa mere, not in issue here. See Campbell, J., in Tillotson v. Carpenter, infra.

of the class of "heirs of her body" was to be determined; that title vested in such persons at grantor's death and therefore vesting was not postponed to any later date. The effect was to vest title in grantor's bloodline as against those strangers to it.

Here it appears, so far as it affects any share in the estate, that the only change in the children of testator between July 10, 1951, when his son and life tenant, John H. Smith, died, and August 2, 1970, when John's wife and joint life tenant died, was that testator's son Fabian died in January 1969 leaving his wife, but no children. Under our opinion title vested on July 10, 1951, in testator's children (or their children by right of representation) which included his son Fabian. That Fabian or any other child might die after title vested in them and the property pass on to their heirs or devisees who might be other than successors in blood of testator, was not proscribed by any clause in testator's will.

We have not overlooked the use of the word "then" in the will, and that Judge Campbell writing for the court in Tillotson v. Carpenter, supra, referred to it as an adverb of time which by usage refers to a precise point of time. He then stated its use there did not express a point of time by a period of time. Here its use is after the clause "if there be no heirs of his body", and refers not to time but the "if such be the fact" dictionary definition. Webster's New International Dictionary, 2d Ed. For an extended discussion of the word "then" see In re Metzgar's Estate, 395 Pa. 322, 148 A.2d 895.

The judgment is affirmed.

HANSON, P. J., and WINANS and DOYLE, JJ., concur.

WOLLMAN, J., dissents.

WOLLMAN, Judge (dissenting).

It is clear that William H. Smith intended that the property be distributed to his children by right of representation if John H. Smith should die leaving no heirs of his body. This being the

case, it seems to me that we do violence to the testator's intent if we reach a result that vests an interest in the property in one other than the blood line of William H. Smith. As the California court stated in the case of In re Rutan's Estate, 119 Cal.App.2d 592, 260 P.2d 111, 118:

> "Moreover, as said in Re Estate of Boyd, 24 Cal.App. 2d 287, 289-290, 74 P.2d 1049, at page 1050: 'It is well settled that where the provisions of a will are capable of two interpretations, under one of which those of blood of the testator will take, while under the other the property will go to strangers, the interpretation by which the property goes to those of blood of the testator is preferred. In re Estate of Hartson, 218 Cal. 536, 24 P.2d 171; In re Estate of Wilson, 65 Cal.App. 680, 225 P. 283.' "

The following quotation from V, American Law of Property, § 21.3, page 131 is applicable:

> "In construing a donative transaction 'the court will have regard for the common desire of men to favor with their bounty, their own kin.' This preference will cause a pull in the direction of construing a gift to a stranger as contingent to increase the likelihood that the property will come back to blood relatives. In Sorrels v. McNally, the court said: 'The presumption that a legacy was intended to be vested applies with far greater force, where a testator is making provision for a child or grandchild, than where the gift is to a stranger or to a collateral relative.'
>
> "In some cases this preference should work against a finding that an interest given to a blood relative is vested prior to the time set for enjoyment of the interest in possession because as a vested interest it may descend to the transferee's heirs, who may not be related by blood to the transferor, whereas if the interest is contingent on the survival of the initial transferee, his failure to meet the requirement of survival will normally cause the property to go back to the blood relatives of the transferor."

See also In re Murray's Will, 207 Minn. 7, 290 N.W. 312. This rule of preference for distribution to the blood line was recognized by Judge Campbell in his opinion for the court in Tillotson v. Carpenter, 61 S.D. 570, 250 N.W. 339.

I would hold that in the context of the will and the decree of distribution the words "to the children of said William H. Smith, deceased, by right of representation" imply a condition that such children, including grandchildren and great grandchildren, must survive until the termination of the prior life estates to take their respective shares of the property.